UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-20424-CIV-UNGARO/SIMONTON

PREFERRED CARE PARTNERS
HOLDING CORP., et al.,

      Plaintiffs,

v.

HUMANA, INC.,

      Defendant.
_____/

<u>ORDER</u>

Presently pending before the Court are Plaintiffs' Motion to Compel Better Responses to Discovery Requests (DE # 26)[1] and Plaintiffs' Motion to Compel Better Responses to Second Request for Production (DE # 39),[2] as well as Defendant's Objection to Plaintiffs' Designation of Certain Production as "Specially Restricted" (DE # 38).[3]  These motions are ripe for adjudication and have been referred to the undersigned Magistrate Judge (DE ## 27, 40, 41).  The undersigned held a telephonic hearing on all three motions on July 7, 2008.  Based upon a careful review of the record, including counsels' arguments at the hearing, each Motion is **GRANTED IN PART AND DENIED IN PART**, as set forth below.

_____

[1]  This Motion is fully briefed (DE ## 34, 37).

[2]  This Motion is fully briefed (DE ## 44, 46).  In addition, because one aspect of the motion to compel concerned the production of a prior confidential settlement agreement in an unrelated case, one of the parties to the settlement agreement made an appearance and filed an Objection to Request for Production of Settlement Agreement (DE # 48).

[3]  This Objection was properly filed as a Motion, and is fully briefed (DE ## 45, 49).

I.      BACKGROUND

In their Complaint, Plaintiffs allege they are direct competitors of Defendant, Humana, Inc., but that they permitted Humana to examine their sensitive proprietary records while conducting due diligence in the expectation that Humana would purchase Plaintiffs' businesses.  Plaintiffs further allege that Humana violated the confidentiality agreement which governed the due diligence process by improperly using Plaintiffs' proprietary records to poach their providers and customers.  Plaintiffs seek compensataory and punitive damages for breach of the confidentiality agreement (Count I), breach of duty of good faith and fair dealing (Count II),[4] misappropriation of trade secrets (Count IV), and tortious interference with advantageous business relationships (Count VI), as well as specific performance and injunctive relief (Counts III and V) (DE # 1).

II.      OVERVIEW OF THE INSTANT MOTIONS

A.      Plaintiffs' First Motion to Compel (DE # 26)

Plaintiffs filed a Motion to Compel Better Responses to Discovery Requests ("Plaintiffs' First Motion to Compel") (DE # 26), in which they initially demanded better responses to a single interrogatory (Interrogatory No. 6) and seventeen separate requests for production (Requests No. 8-9, 21-23, 51-57, 59-61, and 66-67).  In their reply, however, Plaintiffs reported that the parties were able to completely resolve their dispute over Interrogatory No. 6 as well as Requests No. 9 and 66 (DE # 37 at 2-3).

Moreover, the parties partially resolved Requests No. 51-57 prior to the filing of

---

[4]  The District Court dismissed Count II, alleging breach of the duty of good faith and fair dealing as duplicative of the breach of contract claim alleged in Count I (DE # 24).

2

Plaintiff's Reply, based on Humana's willingness to produce documents in certain named employees' personnel files "that reflect the bonus structure in each of these individual' respective compensation packages" (DE # 37 at 4).   At the July 7, 2008 hearing, Humana agreed that it would also produce documents reflecting any coaching, admonishments, criticisms and/or disciplinary actions relating to marketing practices violations" in those individuals' personnel files, thus resolving Requests No. 51-57 in their entirety.

Therefore, the only remaining disputed discovery items that were raised in Plaintiffs' First Motion to Compel are Requests No. 8, 21-23, 59-61 and 67.

### B.    Plaintiffs' Second Motion to Compel (DE # 39)

In addition, Plaintiffs filed a Motion to Compel Better Responses to Second Request for Production ("Plaintiffs' Second Motion to Compel") (DE # 39), in which they requested better responses to thirteen requests for production (Requests No. 1, 4-12, 16 and 18-19).  In their Reply, however, Plaintiffs stated that the parties had reached an agreement concerning Requests No. 1, 4-10 and 16 (DE # 46 at 1-2).

Therefore, the only disputed matters that remain from Plaintiffs' Second Motion to Compel concern Requests No. 11-12 and 18-19.

### C.    Defendant's Objection to Plaintiffs' Designation of Certain Production as "Specially Restricted" (DE # 38)

Humana filed an Objection to Plaintiffs' production of certain discovery materials using the most restrictive designation available under the Confidentiality Agreement (i.e., "Specially Restricted").  Humana argued that Plaintiffs' improper designation prevented it from showing the materials to employees with "unique knowledge of the

3

market" in order to effectively defend this lawsuit (DE # 38 at 4).[5]

At the hearing, Humana withdrew its objection based upon the parties' agreement at the hearing that each party will permit the other party's in-house counsel to view discovery documents produced under a "Specially Restricted" designation.  The parties further agreed that Humana's withdrawal of its Objection was without prejudice to allow Humana to reassert its Objection in the event that Humana identifies a need to share discovery materials that Humana alleges are improperly classified as confidential with additional Humana employees.

III.   ANALYSIS

A.   Plaintiffs' First Motion to Compel (DE # 26) – Request No. 8

In their First Motion to Compel (DE # 26), in Request No. 8, Plaintiffs sought all agreements between Humana and its agents on the one hand and any and all Management Service Organizations on the other, in force during the time period from January 1, 2007 to the present, within Miami-Dade and Broward Counties.[6]

1.   The Parties' Positions

Humana begins by asserting that the Management Service Organization agreements ("MSO agreements") at issue here contain its most sensitive proprietary information, including the capitation rates that it pays to its participating health care

---

[5] In its Objection, Humana identified a single individual that it claimed should be able to analyze the documents produced by Plaintiffs, but Humana neither provided the name of that person nor a description of her role within the corporation (DE # 38 at 4).

[6] Plaintiffs' initial request asked for "all agreements between Humana and its agents on the one hand and any and all Management Service organizations on the other," but Plaintiffs subsequently agreed to limit the geographic scope of the request to Miami-Dade and Broward Counties and to limit the temporal scope of their request to cover January 1, 2007 to the present (DE # 37 at 5) in order to address, in part, Humana's objections to this discovery item.

providers.  Ironically, this is this very information that Plaintiffs allege Humana stole from them and used to lure away their customers, giving rise to this lawsuit (DE # 34 at 5).

The parties first dispute the relevance of the requested materials.  Plaintiffs contend that Humana employed "unorthodox procedures . . . in negotiating new contracts with two doctors that Humana lured away" from Plaintiffs by improperly using the confidential information it gleaned in the course of conducting due diligence. Therefore, Plaintiffs contend, it is important to their case that they resolve the conflicting testimony in the record as to whether Humana's providers typically contract directly with Humana or whether its providers contract indirectly through Humana's MSOs (DE # 26 at 4; DE # 37 at 5).  In other words, it appears that Plaintiffs predict that the requested MSO agreements will tend to show a relationship between Humana's departure from its standard operating procedure on those occasions that it improperly utilized Plaintiffs' proprietary data to contract with the providers it intended to steal from Plaintiffs.  In their Reply, Plaintiffs state that they have "learned through discovery that Humana used a similarly non-routine approach to contract with other PCP medical providers in an effort to increase its membership at PCP's expense" (DE # 37 at 5 n.4).  At the July 7, 2008 hearing, Plaintiffs clarified their contention by stating that Humana departed from its usual flat-rate capitation agreements after it viewed Plaintiffs' confidential proprietary information and adopted a payment scheme that incorporated Plaintiffs' practice of offering bonus payments to providers who instituted cost-saving measures in order to steal Plaintiffs' providers.  Moreover, they argued that this discovery also relates to Humana's Third Affirmative Defense that Humana conducted "business as usual in seeking to expand [its] network of providers and members" (DE # 25 at 12).

5

Humana, on the other hand, argues that the record conclusively demonstrates that Plaintiffs' proposal for how it could use the MSO agreements is frustrated by the fact that the only two physicians named in the complaint contacted Humana, and not vice versa.  Thus, Humana contends, the relevance of its "standard operating procedures" with regard to the way it contracts with providers is a "red herring" because there is a gap between Plaintiffs' idea of how the requested information is relevant to their case and the way that the information can be used based on the actual evidence in the record (DE # 34 at 7-8).

Even if the requested information is relevant, Humana further contends that its production should not be compelled because it is so extraordinarily confidential. Humana contends that the typical standard for discovery is not applicable when confidentiality concerns pervade, and this Court should scrutinize Plaintiffs' request under a two-step inquiry that first requires Humana to establish "that the information sought is confidential and [that] its disclosure might be harmful;" and, assuming Humana meets that burden, then requires Plaintiffs to "show 1) relevancy and 2) a need for the information at this time," which is "akin to the showing required to overcome a work-product privilege" (DE # 34 at 4-5) (citing *Empire of Carolina, Inc. v. Mackle*, 108 F.R.D. 323, 326 (S.D. Fla. 1985)).  Seizing upon the inherent irony of Plaintiffs' request that Humana produce the same category of information that forms the basis of this lawsuit, Humana points out that Plaintiffs

> denied Humana any ability to review actual provider contracts (save for two MSO agreements) under circumstances where it was critical to Humana's proper evaluation of the wisdom of its possible acquisition of [Plaintiffs], [while] claimi[ng] unfettered entitlement to those very contracts from Humana [in the context of this lawsuit]

6

(DE # 34 at 6).[7]

Humana also contends that "the Confidentiality Agreement and Order in this case is no panacea," and cites the risk of inadvertent (or even purposeful) disclosure despite the Confidentiality Agreement and Order as a justification for refusing to produce the requested information (DE # 34 at 6-7) (citing *Andrx Pharmaceuticals, LLC v. Glaxosmithkline, PLC*, 236 F.R.D. 583, 585 (S.D. Fla. 2006)).

To address Humana's confidentiality concerns, Plaintiffs have stated that they would be amenable to "Humana's production of these documents in a form that redacts the actual names of the MSOs" (DE # 37 at 5).[8]

In addition, Plaintiffs point out that the Confidentiality Agreement and Order entered in this case permits Humana to use the "SPECIALLY RESTRICTED" designation where appropriate, which would prevent Plaintiffs' in-house counsel from reviewing any information so designated (DE # 37 at 5).  Plaintiffs contend that *Empire of Carolina* is distinguishable from this case because the Court in that case specifically found a "specific and clear showing of immediate and irreparable harm" to the party resisting discovery which is not present here (DE # 37 at 6).  Plaintiffs also assert that *Duracell* is inapplicable because it involved a concern that the requesting party would combine its overwhelming market dominance with the requested discovery information to squelch

---

[7]  Humana also cites a District Court Order for the proposition that "[t]he discovery rules are not intended to forfeit a party's ability to compete effectively in the market by opening up tangentially relevant financial and marketing information to competitors" (DE # 34 at 5) (citing *Duracell, Inc. v. SW Consultants, Inc.*, 126 F.R.D. 576, 578 (N.D. Ga. 1989)).

[8]  This concession is, however, conditional, as Plaintiffs wish to reserve the right to discover the identity of those MSOs if future circumstances warrant such discovery (DE # 37 at 5).

its smaller corporate competitor and litigation opponent, whereas the roles are reversed in this case, with regard to the parties' relative size and market power.  *Id.*

>    2.    <u>Discussion</u>

The Court begins where the parties agree.  First, Plaintiffs agree to limit this request to Miami-Dade and Broward Counties, where Plaintiffs allege they did business. Second, Plaintiffs agree that Humana may redact its discovery responses or substitute aliases for the names of the MSOs and/or providers, in order to ensure that the information provided in discovery is not used by Plaintiffs to improperly lure Humana's providers away from them.  The Court finds that these are reasonable concessions.

The Court rejects Humana's argument that this information is not relevant because the record does not support Plaintiffs' theory of the case.  Plaintiffs are entitled to discover relevant information, even though Humana believes that Plaintiffs' claims are baseless.  While Humana points out that discovery has so far demonstrated that two providers left Plaintiff and approached Humana about signing a contract, that fact alone does not conclusively prove Humana's case.  It is possible that Humana's perspective is based on an incomplete set of facts and Plaintiffs are entitled to further discovery in order to rebut Humana's contention that it did not solicit these providers who were formerly under contract with Plaintiffs, or to prove that Humana violated their confidentiality obligations during due diligence in other ways, or with respect to different providers.

Finally, this Court rejects Humana's argument that it may refuse to produce the requested MSO agreements based on its concerns regarding the confidential nature of the agreements.  The Court notes that in *Andrx*, the information was provided to outside counsel under the same type of restriction that is available in the Confidentiality Order at

issue here.  In light of the limited geographic scope of the request, Humana's ability to

redact sensitive information and/or to use aliases where appropriate, and the restrictions

on the extent of permissible disclosures of the requested information pursuant to the

Confidentiality Agreement, Humana shall produce the MSO agreements sought in

Request No. 8.

**B.    Plaintiffs' First Motion to Compel (DE # 26) – Requests No. 21-23;
        Plaintiffs' Second Motion to Compel (DE # 39) – Requests No. 11-12 and 18**

In their First Motion to Compel (DE # 26), Plaintiffs modified Requests No. 21-23 to

seek "[a]ll documents, including but not limited to e-mails and marketing plans, relating

to Humana's plans for marketing its Medicare Advantage Plans in South Florida at any

time since January 1, 2006 to the present" (Request No. 21); "[a]ll plans, policies and

procedures related to Humana's marketing of Medicare Advantage plans in South Florida

at any time since January 1, 2006 to the present" (Request No. 22); and "[a]ll Humana

plans, policies and procedures relating to Humana's marketing, growth or acquisitions

of Medicare Advantage Plans in South Florida at any time from January 1, 2006 to the

present" (Request No. 23).

In addition, in their Second Motion to Compel (DE # 39), Plaintiffs requested

documents created between January 1, 2007 and the present that reflect the substance

of the weekly marketing meetings between Michael Seltzer and his staff (Request No.

11), or the substance of any marketing meetings involving discussions about Plaintiffs

or the expansion of Humana networks in Florida (Request No. 12), as well as "[b]udgets

[and any related documents] reflecting the target numbers for membership increases in

Humana's . . . Medicare Advantage Plans in Florida for 2007 and 2008" (Request No. 18).

1.    **The Parties' Positions**

Humana's argument with regard to these discovery requests mirrors its argument relating to the production of the MSO agreements, discussed above.  Humana urges that because the disclosure of this information would be harmful to it, the Court should scrutinize the relevance and need for the requested information at this time before permitting commercial competitors, like Plaintiffs, to "seek information which goes to the heart of Humana's proprietary strategies and policies" (DE # 34 at 9-11) (citing *Duracell, Inc v. SW Consultants, Inc.*, 126 F.R.D. 576, 578 (N.D. Ga. 1989)).

In their motion to compel, Plaintiffs allege that "Humana has a history of engaging in improper marketing practices and . . . similarly engaged in such conduct with respect to the events giving rise to this litigation;"; and, that Humana's imposition of unrealistic quotas "for enrolling new members in their Medicare Advantage Plans . . ., as embodied in the marketing [materials] sought in these requests[ ] likely engendered the conduct giving rise to Plaintiffs' claims in this case" (DE # 26 at 7).  Plaintiffs refine their position in their Reply, where they state: (1) that Humana was engaged in an "'aggressive' growth strategy" during the time that it considered purchasing Plaintiffs' businesses; and (2) that in order to force Plaintiffs into the sale, Humana attempted to lure Plaintiffs' providers and members away from them by using the proprietary information gleaned during due diligence; and (3) that they did so in contravention of the parties' confidentiality agreement.  Based on these allegations, Plaintiffs contend that Humana's marketing materials are relevant and discoverable (DE # 37 at 7-8).  Plaintiffs also reassert their argument, summarized above, that the Confidentiality Agreement and Order in this case should resolve any concerns relating to the sensitive nature of Humana's proprietary information.  *Id.* at 8.

10

Humana responds that "marketing" materials encompass two forms of documents. The first category of documents involve Humana's "strategies for organic growth," (DE # 34 at 9) which this Court will refer to as "Internal Marketing Materials." The second category of documents constitutes "the actual game plan for how to properly abide by governmental marketing guidelines," which this Court will refer to as "Compliance Marketing Materials." *Id.* at 9. Humana contends that Plaintiffs' allegations concerning Humana's "history of marketing abuses" does not concern the first category of "Internal Marketing Materials," and, therefore, those documents are irrelevant. Humana then contends that this litigation does not concern the question of whether or not Humana complied with governmental marketing regulations, meaning that its Compliance Marketing Materials are also irrelevant, notwithstanding the fact that Plaintiffs added allegedly irrelevant allegations to their complaint regarding Humana's purported non-compliance with government regulations on marketing. *Id.* at 9-11.

Finally, with regard to documents related to Humana's monthly marketing meetings, Humana states that there is no secret that Humana had an interest in expanding its network and so it should not have to reveal the confidential substance of the meetings unless the discussion turned to issues relating to Plaintiffs specifically. Plaintiffs replied at the hearing that they should be entitled to examine records of all marketing meetings based on their belief that they will find support for their contention that Humana's misuse of Plaintiffs' proprietary information caused Humana to uniquely target their providers and members and used a strategy that was different than the one it used to attract providers and members under contract with other competitors. Because the crux of Plaintiffs' argument requires a comparison to Humana's marketing strategy with regard to other companies, Plaintiffs oppose Humana's argument that materials

reflecting discussions about other companies should be shielded from discovery.

2.    Discussion

Humana's position here is not persuasive.  Tellingly, Humana does not refute the pat proposition, squarely presented in this case, that a company's "marketing materials" – as that term is commonly understood – are germane to a dispute as to whether a corporation with an aggressive strategy for growing its business might have been compelled to inappropriately obtain a competitor's proprietary information by breaching a confidentiality agreement with that competitor and then to improperly use the information to its advantage by interfering with its competitor's business relationships. Faced with this stark reality, Humana tells us that marketing materials fall into to two categories (i.e., "Internal Marketing Materials" and "Compliance Marketing Materials"), and that neither of those two categories of materials are relevant to this case.

If Humana is willing to concede that it violated the confidentiality agreement by using Plaintiffs' proprietary information to force a sale by luring away Plaintiffs' providers and members, then the probative value of the requested materials will surely be diminished.  And yet, as long as Humana holds Plaintiffs to their burden of proving their allegation that Humana breached the confidentiality agreement, Plaintiffs are entitled to discover documents that are likely to provide circumstantial support for its argument that Humana in fact breached the confidentiality agreement because its marketing strategy provided a strong motivation to do so.[9]  Even if the Court were

_____

[9]  Humana's argument that the District Court's Order dismissing Count II (breach of good faith and fair dealing) somehow implied that Count I (breach of the confidentiality agreement) was a "strict liability issue," thereby freeing Humana from its discovery obligations, is belied by the record.  The Court dismissed Count II because it was duplicative of Count I (DE # 24).  The Court did not say that proof of a breach of contract claim cannot be supported by circumstantial evidence.

inclined to accept Humana's invitation to recognize a distinction between Internal Marketing Materials and Compliance Marketing Materials, the analysis would not change because Humana's approach to governmental marketing regulations during the relevant time – as evidenced in its Compliance Marketing Materials – will likely indicate whether Humana was faced with the competitive pressure that Plaintiffs allege impelled it to breach its obligations under the confidentiality agreement.

The Court also finds that Plaintiffs are entitled to discovery that will enable them to investigate their claim that Humana misused Plaintiffs' confidential proprietary information by examining whether Humana targeted Plaintiffs' providers and members in a way that they did not market themselves to other competitors' providers and members. Thus, materials reflecting the substance of Humana's marketing meetings are relevant.

The Court finds that the marketing materials in Requests No. 21-23, as well as the marketing meeting notes and budget documents in Requests No. 11-12 and 18, are relevant, although they are based on a somewhat speculative theory concerning their relationship to the matters in dispute, and they are extraordinarily confidential. Therefore, these discovery requests are subject to the parties' agreement regarding the redaction of unrelated material (DE # 46 at 4, 6-7); they are subject to the terms of the Confidentiality Order; they only pertain to Miami-Dade and Broward Counties; and, they only pertain to those Humana entities that market Medicare Advantage Plans.

C.    Plaintiffs' First Motion to Compel (DE # 26) – Requests No. 59-61

In Requests No. 59-61 of their First Motion to Compel (DE # 26), Plaintiffs seek "[a]ll documents produced by Humana to the Oklahoma Insurance Commissioner's office during its investigation of Humana's practices, as described in Plaintiffs' Complaint" (Request No. 59); as well as all documents related to that Investigation

13

(Request No. 60); and "[a]ll documents upon which Humana's Senior Vice-President of Governmental Relations, Heidi Margulis, relied [on] in testifying before the United States Senate Special Committee on Aging that Humana has 'zero tolerance' for violations of its marketing code" (Request No. 61).

1.    The Parties' Positions

Plaintiffs assert that Humana's history of engaging in marketing practices that violate state law relate to their claim that Humana engaged in marketing practices that similarly violated the parties' private confidentiality agreement.  In response, Humana asserts that "[i]t is settled law in Florida that before similar accidents or incidents are discoverable, the plaintiff must establish a substantial similarity to the matter at issue in the case to make them relevant" (DE # 34 at 12) (emphasis omitted) (citing *Caterpillar Indus., Inc. v. Keskes*, 639 So. 2d 1129 (Fla. 5th DCA 1994); *Nissan Motors Corp. v. Espinosa*, 716 So. 2d 279 (Fla. 4th DCA 1998)).  Humana notes that the Oklahoma Investigation and Ms. Margulis' Senate Testimony are not only "geographic[ally] irrelevan[t]," but also did not involve Medicare, as this case does.  *Id.* at 13.

Plaintiffs reply that the Florida rules requiring that prior acts or incidents be substantially similar to the issue at hand in order to be discoverable are not applicable to this case in federal court.  Plaintiffs also argue that, even if those rules were applicable in this case, the Oklahoma Investigation and the Senate Testimony are both relevant because they did indeed involve Medicare, contrary to Humana's factually erroneous contention otherwise (DE # 37 at 9-10).

2.    Discussion

This undersigned agrees with Plaintiffs that the Florida State Court decisions in *Caterpillar Industries* and *Nissan Motors* are not pertinent to this Court's analysis of the

14

relevant rules of Federal Civil Procedure.  However, the undersigned finds that Plaintiffs are only entitled to discovery that satisfies the definition of relevance pursuant to Fed. R. Civ. P. 26; and that Plaintiffs' Requests No. 59-61 fail to meet this test.

Given the current state of the record, the undersigned is unable to conclude, as Plaintiffs propose, that all of the documents produced in connection with the Oklahoma Investigation are relevant to the matter at bar.  Based on the documentation provided by Plaintiffs, the Oklahoma Insurance Commissioner alleged that Humana used unlicensed agents to sell Medicare plans to senior citizens and Humana neither contested the allegations nor the $500,000 fine that was levied against it (DE # 37, Exh. B).  It is true enough that the Oklahoma Investigation, like this case, involved Medicare-related issues, but Plaintiffs fail to adequately explain how Humana's failure to properly license its sales agents in Oklahoma bears on the allegations enumerated in the Complaint.

Plaintiffs might be entitled to this item of discovery if there were some reason to believe that Humana's desperate attempts to market its relevant Medicare Plans caused it to violate Oklahoma's marketing regulations, in the same way that Plaintiffs allege that Humana was driven to breach the confidentiality agreement at issue here.  However, based on the record, there is nothing to indicate that Humana's violation of Oklahoma's marketing regulations had anything at all to do with the case at bar, as opposed to some other reason such as its in-house attorneys' simple negligence.  The fact that Humana was generally not compliant with its marketing obligations under state law is not sufficiently germane to these claims to permit the requested discovery despite the Federal Rules' forgiving definition of "relevance."

This Court similarly fails to see the relevance of Plaintiffs' request to discover all of the documents Humana's Senior Vice President relied upon to testify before the U.S.

15

Senate that Humana has a "zero tolerance" policy with regard to violations of its marketing code.  As is the case with the Oklahoma Investigation materials that Plaintiffs requested, the mere fact that Plaintiffs allege that Humana committed a bad act does not entitle them to discover each and every piece of paper related to any prior bad act committed by Humana in an effort to prove that this bad act is consistent with Humana's pattern of committing a long line of bad acts.  Whether Humana has a history of generally complying with its own marketing rules is not relevant to this matter in the absence of a substantive connection between its breach of those rules and its alleged breach of this confidentiality agreement.

>    D.    **Plaintiffs' First Motion to Compel (DE # 26) – Request No. 67**

Plaintiffs, in Request No. 67 of their First Motion to Compel (DE # 26), seek Plaintiffs' tax returns from 2005 to the present.

>    1.    **The Parties' Positions**

Humana emphasizes that Plaintiffs' only basis for requesting its tax returns is to establish Humana's net worth for the purposes of their punitive damages claim. According to Humana, its public filings make easy work of calculating its net worth and there is therefore no reason to compel the production of its "closely guarded" tax returns to find this duplicative information (DE # 34 at 13-14).  While conceding that the Eleventh Circuit Court of Appeals eschews the requirement that a party show a "compelling need" to discover an opponent's tax returns, Humana urges that the material nevertheless must be relevant and that its tax returns are not relevant because Plaintiffs already have the tools needed to ascertain Humana's net worth.  *Id.* at 14-15. Plaintiffs, on the other hand, contend that Humana's position amounts to no more than "a backdoor application of the very same 'compelling need' standard that is inapplicable

in this jurisdiction" (DE # 37 at 10).

> **2.** <u>Discussion</u>

Humana's response sets forth the rationale for permitting the discovery of its tax returns without establishing any justification to depart from those standards.  Simply stated, Humana's net worth is relevant to this cause because Plaintiffs demand punitive damages; and, Humana's tax returns are relevant, in turn, because they contain information necessary to calculate Humana's net worth.  Humana is not relieved of its discovery obligations simply because the information can be acquired from some other source.  The undersigned notes that the context in which financial figures are disclosed sometimes result in variances in the calculation of those figures.  Finally, the undersigned recognizes that tax returns are, by nature, private; and, for this reason, they shall be produced pursuant to the terms of the Confidentiality Agreement and Order.

> **E.** <u>Plaintiffs' Second Motion to Compel (DE # 39) – Request No. 19</u>

In Request No. 19 of their Second Motion to Compel (DE # 39), Plaintiffs requested the confidential settlement agreement in *WellCare of Florida, Inc. v. Pasteur Medical Center, Inc.*, Cases No. 07-10510 CA 21 and 05-24450 CA 22, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.  Pursuant to this Court's July 7, 2008 Order (DE # 50), counsel for Humana submitted a copy of the settlement agreement to the Court for an *in camera* review.  In addition, counsel for Pasteur filed a document objecting to the motion to compel (DE # 49), and appeared at the July 7, 2008 hearing, where he made arguments opposing the production of the settlement agreement.

### 1.    The Parties' Positions

Based upon the undersigned's *in camera* review of the settlement agreement, she informed Plaintiffs' counsel at the July 7, 2008 hearing that the settlement agreement was a standard settlement and general release of claims.  Nevertheless, Plaintiffs' counsel argued that Humana should produce the settlement agreement because the dollar value of the settlement was admissible under Federal Rule of Evidence 404 as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, because it showed Humana's past improper conduct and demonstrated the extent of its misconduct in that case based on its willingness to agree to a lucrative settlement.  According to Plaintiffs, this supports their position that Humana would be willing to engage in the alleged misconduct at issue in the instant case.  Plaintiffs argue that discovering the amount of the settlement is vital to their argument.

Humana argues that the settlement agreement in an unrelated Florida State action is irrelevant to this lawsuit.  Humana and third-party Pasteur also argue that a material term of the settlement was the parties' agreement to preserve its confidentiality.  All parties agree, however, that the amount of the settlement is the only aspect of the agreement that raises confidentiality concerns.

### 2.    Discussion

The undersigned concludes that this settlement agreement – which arose as a result of a lawsuit concerning different substantive allegations relating to different parties taking place over a different time span – is not relevant to this case; yet, to the extent that it is relevant at all, its remote relevance is outweighed by countervailing confidentiality concerns.  Humana and Pasteur did not object to producing the

18

settlement agreement, provided that the amount of the settlement would be redacted. The undersigned recognizes that this apparent compromise position is not much of a compromise at all, because the amount of the settlement is the only material term of the agreement from Plaintiffs' perspective.  Nevertheless, that is all that Humana and Pasteur have agreed to produce and all that Plaintiffs are entitled to under the Federal Rules.  The parties agree that this ruling is made without prejudice for Plaintiffs to renew their motion to compel if additional facts warrant the production of the settlement agreement.   Accordingly, it is

**ORDERED AND ADJUDGED** that Plaintiffs' First Motion to Compel (DE # 26) is **GRANTED IN PART AND DENIED IN PART** as follows:

1.      Plaintiffs' motion is **DENIED AS MOOT** with respect to Interrogatory No. 6 and Requests No. 9, 51-57 and 66, based upon the parties' mutual resolution of those discovery matters.

2.      Plaintiffs' motion is **GRANTED** with respect to Request No. 8.  On or before August 6, 2008, Humana shall produce all responsive MSO agreements within its possession, custody or control, subject to the terms of the Confidentiality Order (DE # 30) to the extent that it is applicable.  Pursuant to the parties' agreement and this Court's ruling on the record at the July 7, 2008 hearing, this discovery item is limited to the MSO agreements in force between January 1, 2007 and the present; it is limited to Miami-Dade and Broward Counties; and, Humana is permitted to reasonably redact the documents and/or use aliases for providers and members in order to protect its confidential and proprietary information.

3.      Plaintiffs' motion is **GRANTED** with respect to Requests No. 21-23.  On or

before August 6, 2008, Humana shall produce all responsive marketing materials within its possession or control, subject to the terms of the Confidentiality Order to the extent that it is applicable.  Pursuant to the parties' agreement and this Court's ruling on the record at the July 7, 2008 hearing, this discovery item is limited to the period of time between January 1, 2006 and the present; is limited to Miami-Dade and Broward Counties; and, it is limited to those Humana entities that market the Medicare Advantage Plans at issue in this lawsuit.

4.      Plaintiffs' motion is **DENIED** with respect to Requests No. 59-61.

5.      Plaintiffs' motion is **GRANTED** with respect to Request No. 67.  On or before August 6, 2008, Humana shall produce the tax returns that it filed from 2005 to the present, subject to the terms of the Confidentiality Order to the extent that it is applicable.  It is further

**ORDERED AND ADJUDGED** that Plaintiffs' Second Motion to Compel (DE # 39) is **GRANTED IN PART AND DENIED IN PART** as follows:

1.      Plaintiffs' motion is **DENIED AS MOOT** with respect to Requests No. 1, 4-10 and 16, based upon the parties' mutual resolution of those discovery matters.

2.      Plaintiffs' motion is **GRANTED** with respect to Requests No. 11-12 and 18. On or before August 6, 2008, Humana shall produce all responsive documents reflecting the substance of its marketing meetings that took place between January 1, 2007 and the present, as well as and budget documents reflecting the target numbers for membership increases in Humana's Medicare Advantage Plans in Florida for 2007 and 2008, subject to the terms of the Confidentiality Order to the extent that it is applicable.  Pursuant to the parties' agreement and this Court's ruling on the record at the July 7, 2008 hearing,

20

this discovery item is limited to Miami-Dade and Broward Counties; it is limited to those Humana entities that market the Medicare Advantage Plans at issue in this lawsuit; and, it is subject to the parties' agreement regarding the redaction of unrelated material.

3.      Plaintiffs' motion is **GRANTED** with respect to Request No. 19.  On or before August 6, 2008, Humana shall produce the settlement agreement in *WellCare of Florida, Inc. v. Pasteur Medical Center, Inc.*, Cases No. 07-10510 CA 21 and 05-24450 CA 22, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.  Pursuant to this Court's ruling on the record at the July 7, 2008 hearing, Humana shall redact the dollar amount of the settlement.  This ruling is without prejudice, with leave for Plaintiffs to renew their motion to compel an unredacted version of the settlement agreement if it is warranted.  It is finally

**ORDERED AND ADJUDGED** that Humana's Objection to Plaintiff's Designation of Certain Production as "Specially Restricted" (DE # 38) is **DENIED AS MOOT** based upon Humana's withdrawal of its Objection on the record at the July 7, 2008 hearing in light of the parties' agreement that in-house counsel shall be permitted to review materials designated as "specially restricted;" and, this ruling is without prejudice with leave for Humana to renew its Objection if it is warranted.

**DONE AND ORDERED** in Chambers in Miami, Florida on July 8, 2008.

*Andrea M. Simonton*
_____
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies furnished to:
The Honorable Ursula Ungaro, United States District Judge
All counsel of record