UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-20424-CIV-UNGARO

PREFERRED CARE PARTNERS HOLDING
CORP., a Florida corporation, PREFERRED
CARE PARTNERS, INC., a Florida corporation,
and INTEGRAL PHARMACY SERVICES, INC.,
a Florida corporation,
  Plaintiffs,

vs.

HUMANA, INC., a foreign corporation,
  Defendant.
_____/

## ORDER AFFIRMING MAGISTRATE JUDGE'S ORDER

  THIS CAUSE is before the Court on Defendant Humana Inc.'s Objection/Appeal of Two Portions of the Magistrate Judge's July 8, 2008 Order and Memorandum of Law, filed July 21, 2008 (D.E. 61).  Plaintiffs filed their response August 4, 2008 (D.E. 68), to which Defendants filed their reply on August 7, 2008 (D.E. 70).  Also before the Court is Plaintiffs' Motion for Leave to File Surreply to Defendant's Reply, filed August 8, 2008 (D.E. 71).  Defendant responded to Plaintiffs' Motion for Leave to File Surreply on August 13, 2008 (D.E. 73).  All matters are ripe for disposition.

  THE COURT has considered Defendant Humana, Inc.'s Objection/Appeal, Plaintiffs' Motion to Compel Better Responses to Discovery Requests (D.E. 26), Plaintiffs' Motion to Compel Better Responses to Second Request for Production (D.E. 39), Defendant's Objection to Plaintiffs' Designation of Certain Production as "Specially Restricted" (D.E. 38), Magistrate Judge Simonton's Order (D.E. 52), the transcript from the hearing on the foregoing motions held on July 7, 2008 (D.E. 55), and the pertinent portions of the record and is otherwise fully advised in the premises.

By way of background, Defendant Humana, Inc. ("Humana") operates Medicare Advantage Plans in South Florida as Health Maintenance Organizations ("HMOs"). (Compl. ¶ 30.) In 2007, Humana expressed interest in acquiring the Plaintiffs' business and executed a Confidentiality Agreement with the Plaintiffs so that it could view confidential and proprietary information pertaining to the Plaintiffs' medical plans. (Compl. ¶¶ 7-9.) Plaintiffs allege, *inter alia,* that Humana is a direct competitor and that Humana violated the Confidentiality Agreement by improperly using Plaintiffs' proprietary records to poach Plaintiffs' providers and customers. (Compl. ¶¶ 34, 83-87.) Plaintiffs seek compensatory and punitive damages for breach of the Confidentiality Agreement, breach of duty of good faith and fair dealing, misappropriations of trade secrets, and tortious interference with advantageous business relationships, as well as specific performance and injunctive relief.

On May 5, 2008, upon Plaintiffs' and Humana's Joint Stipulation, the Court entered a Confidentiality Order. (D.E. 30.) Among other things, the Confidentiality Order allows counsel to designate certain information produced or furnished in the case as "CONFIDENTIAL INFORMATION" and/or "SPECIALLY RESTRICTED." The "SPECIALLY RESTRICTED" designation limits access to such information to only the parties' outside counsel, experts, court personnel, and non-competing third-party witnesses and deponents.

Plaintiffs filed two motions to compel better responses from the Defendant (D.E. 26, 39), both of which the Court referred to Judge Simonton. (*See* D.E. 27, 40.). Also, Human filed an Objection to Plaintiffs' Designation of Certain Production as "Specially Restricted." (D.E. 38.) This Objection was also referred to Judge Simonton (*See* D.E. 41.) Judge Simonton held a

telephonic hearing on all three motions on July 7, 2008 and entered the Order on all three Motions on July 8, 2008. (D.E. 52.)

Humana then filed the present appeal, objecting to only two portions of the Order. First, Humana objects to Section III(A) of the Order, which requires Humana to produce all agreements between Humana and its agents on one hand, and any and all Management Service Organizations ("MSO") on the other, in force during the time period from January 1, 2007 to the present, within Miami-Dade and Broward Counties. (*See* Mag. Order at 4.) Second, Humana objects to Section III(D) of the Order, which requires Humana to produce its tax returns from 2005 to present.

I.      Motion for Leave to File Surreply

As an initial matter, the Court addresses Plaintiffs' Motion for Leave to File Surreply. Plaintiffs claim that it needs to file an additional memorandum to counter two new arguments Defendant made in its Reply brief. To the extent that Defendant has raised made new arguments–other than those that specifically address points made by Plaintiff in its Response-the Court will ignore such arguments. Accordingly, the Court denies Plaintiffs' Motion for Leave to File Surreply.

II.     Appeal of Judge Simonton's Order

Upon objection by one of the parties, a District Court must review a Magistrate Judge's order on a non-dispositive pretrial matter and must overturn any portion of such order "found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). "[A]n order is clearly erroneous if 'the reviewing court, after assessing the evidence in its entirety, is left with a definite and firm conviction that a mistake has been committed.'" *Pendlebury v. Starbucks Coffee Co.*, No. 04-80521-CIV, 2007 WL 4592267, at *1

(S.D. Fla. Dec. 28, 2007) (quoting *Krys v. Lufthansa German Airlines*, 119 F.3d 1515, 1523 (11th Cir. 1997)).  "The mere fact that a reviewing court might have decided the issue differently is not sufficient to overturn a decision when there are two permissible views of the issue." *Id.* (citing *Georgia State Conference of Branches of NAACP v. Georgia*, 775 F.2d 1403, 1416 (11th Cir. 1985)).

      A.      Judge Simonton's Order Requiring Humana
              to Produce the MSO Agreements Is Not Clearly Erroneous.

Plaintiffs sought to compel all agreements between Humana and MSOs in force since January 1, 2007, within Miami-Dade and Broward Counties.[1]  Plaintiff requested the MSO agreements to ascertain whether Humana departed from its standard operating procedures with respect to its provider contracting policies.  (D.E. 26 at 4.)  More specifically, Plaintiffs maintained that by viewing the MSO agreements, they will be able to determine whether Humana employed new unorthodox procedures in negotiating new contracts with doctors it allegedly lured away from Plaintiffs.  (D.E. 37 at 5.)   Further, Plaintiffs argued that Humana's confidentiality concerns were not warranted since (1) Humana could designate MSO agreements as "SPECIALLY RESTRICTED" under the terms of the Confidentiality Order, which would limit access to the MSO agreements, and (2) Humana could redact the actual names of the MSOs from the agreements, thereby eliminating any identifying information.  (*Id.*)  Humana objected to Plaintiffs' request, arguing that such agreements were "dear and sacred," and Plaintiffs had not demonstrated how the production of these confidential documents between Humana and third-

---

[1] The Court notes that Plaintiffs' initial request was much broader, but that they narrowed their request by inserting temporal or geographic limitations in response to Humana's objection. (*See* D.E. 37 at 5.)  Additionally, Plaintiffs have no objection to Humana redacting certain identifying information.  (*Id.*)

4

parties were relevant to Plaintiffs' argument that Humana had improperly used information obtained from Plaintiffs during the due diligence period. (D.E. 42 at 7). Judge Simonton compelled production because she found that the MSO agreements were relevant, Plaintiffs' had narrowed the scope their request, and because Humana could protect the confidentiality of the agreements by redacting the names of the MSOs and designating the them as "SPECIALLY RESTRICTIVE." (D.E. 52 at 8-9.)

The Court finds that Judge Simonton's ruling was not clearly erroneous. "Under Rule 26(c)(7), there is no absolute privilege that immunizes trade secrets and similar confidential information in discovery." *Empire of Carolina, Inc. v. Mackle*, 108 F.R.D. 323, 326 (S.D. Fla. 1985). While Humana is correct in stating that Plaintiff must show that the confidential information is relevant and necessary (*see* D.E. 61 at 7), Humana fails to recognize that it carries the initial "heavy burden of demonstrating that disclosure will work a clearly defined and very serious injury." *Empire of Carolina,* 108 F.R.D. at 326.[2] At issue then, is whether Humana

---

[2]   As the court in *Empire of Carolina* stated,
> In order to resist discovery of such confidential information, a party must <u>first</u> establish that the information sought is confidential and then demonstrate that its disclosure might be harmful. Once these requirements are met, the burden shifts to the other party to establish that . . . the information is relevant and necessary to the action. . . We stress, however, that under Rule 26(c) of the Federal Rules of Civil Procedure a party seeking to avoid disclosure of materials by protective order "bears a heavy burden of demonstrating that disclosure will work a clearly defined and very serious injury."

108 F.R.D. at 326 (citation omitted) (emphasis added). The Court notes that while the *Empire of Carolina* court ultimately held that the plaintiff was not entitled to discovery because it found that production would cause immediate and irreparable harm to the defendant, there are two important distinguishing factors. First, there was no confidentiality order at issue in Empire that would otherwise protect the confidential information from inadvertent disclosure. Second, here Humana can redact certain identifying information; redacting identifying information was not a possibility in Empire.

demonstrated that the disclosure of a limited number of MSO agreements, with identifying information redacted, to a limited group of people who have no role in the day-to-day operations of either Plaintiffs' or Humana's business will result in a "clearly defined and very serious injury." The Court finds Judge Simonton did not commit clear error because Humana did not satisfy this initial burden where, as Judge Simonton recognized, the MSO agreements may be redacted and protected under the terms of the Confidentiality Order. *See, e.g., Adrx Pharmaceuticals, LLC v. Glaxosimthkline*, PLC, 236 F.R.D. 583 (providing information to outside counsel under similar restrictions contained in the Confidentiality Order).

  Furthermore, even if the Court found that the burden had shifted to the Plaintiff, the Court finds that Judge Simonton's ruling as to relevance was not clearly erroneous.  The Supreme Court has broadly construed the term "relevancy" under Rule 26 to "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case" *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  The MSO agreements are relevant as they could reasonably bear on (i) Plaintiff's position that Humana deviated from its standard operating procedures in negotiating new contracts upon receiving confidential information during the due diligence period and (ii) Humana's affirmative defense that the "conduct of Humana and its subsidiaries was privileged in that they conducted business as usual in seeking to expand their network of providers . . . ." (D.E. 25 at ¶ 25.) Accordingly, Judge Simonton's ruling that the MSO agreements are relevant is not clearly erroneous.

  B.  Judge Simonton's Order Requiring Humana
     to Produce Tax Returns Is Not Clearly Erroneous.

Plaintiffs sought to compel Humana to produce "All federal and state corporate tax returns filed by Human from 2005 to present." (D.E. 26 at 9.) Plaintiffs argued that Humana's financial information and tax returns are discoverable because Plaintiffs are seeking punitive damages. (*Id*.) Humana argued that there are publicly available financial statements that are "are far more relevant" to the question of net worth than their tax returns. (D.E. 43 at 13.) Judge Simonton ruled that the tax records are relevant because they contain information necessary to calculate Humana's net worth and noted that there may be variances in financial figures depending on the context of disclosure. (D.E. 52 at 17.) Judge Simonton recognized, however, the private nature of tax returns and, therefore, required that the tax returns be produced pursuant to the terms of the Confidentiality Order. (*Id.*)

As Humana concedes, several courts within the Eleventh Circuit have held that a moving party <u>does not</u> have to demonstrate a "compelling need" to compel the production of tax returns; rather, only a showing of relevancy is required. *See, e.g., U.S. v. Certain Real Property Known As and Located at 6469 Polo Pointe Way, Delray Beach*, FL, 444 F.Supp.2d 1258 (S.D. Fla. 2006), *Platypus Wear, Inc. v. Clarke Motet & Co.*, No. 06-20976-CIV, 2008 WL 728540 (S.D. Fla. 2008), *Weber v. Finker*, No. 3:07-mc-27-J-32MCR, 2008 WL 1771822 (M.D. Fla. Apr. 15, 2009). In so finding, these courts have relied upon the Eleventh Circuit's decision in *Maddow v. Procter & Gamble Co.*, 107 F.3d 846 (11th Cir. 1997). The Eleventh Circuit in *Maddow* affirmed a district court's decision to compel production of tax returns because the information

was "arguably relevant" to the case. 107 F.3d at 853. Judge Simonton's application of the "relevancy" standard, rather than the "compelling need" standard, was not clearly erroneous.

Furthermore, Judge Simonton's finding that tax returns are relevant to the issue of punitive damages was not clearly erroneous. Nor was it, as Humana contends, "hypothetical or imagined." (D.E. 70 at 6.) As stated earlier, the Supreme Court broadly construes the term "relevancy" under Rule 26 to "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case" *See Oppenheimer Fund,* 437 U.S. 340 at 351. Humana's tax returns are reasonably calculated to support Plaintiff's claim for punitive damages, and this is all that Rule 26 requires. Fed. R. Civ. P. 26(b); *see also MCI Worldcom Network Servs. v. Von Behren Elec., Inc.*, No. Civ. A. 1:00CV3311JTC, 2002 WL 32166535 (N.D. Ga. May 21, 2002) (holding that the discoverability of tax returns turns on relevance and compelling production of tax records because the records were relevant to a claim for punitive damages); *Shearson Lehman Hutton, Inc. v. Lambros*, 135 F.R.D. 195, 198 (M.D. Fla. 1990) (permitting the discovery of defendants' tax returns as they "may lead to admissible evidence concerning the merits of the plaintiff's claims").

Having reviewed all relevant documents and case law, the Court is not "left with the definite and firm conviction that a mistake has been made" with respect to Judge Simonton's Order. *U.S Gypsum Co.*, 333 U.S. at 395; *Krys*, 119 F.3d at 1523. The Court finds that the findings and conclusions contained in Magistrate Judge Simonton's Order are reasonably supported by both fact and law and therefore, are not clearly erroneous or contrary to law.

Accordingly, it is hereby

8

ORDERED AND ADJUDGED Plaintiffs' Motion for Leave to File Surreply (DE. 71) is DENIED, and it is further

ORDERED AND ADJUDGED that Judge Simonton's Order (D.E. 52) is AFFIRMED.

DONE AND ORDERED in Chambers at Miami, Florida, this 2d day of October, 2008.

_____<br>
URSULA UNGARO<br>
UNITED STATES DISTRICT JUDGE

copies provided:
counsel of record