## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 08-20424-CIV-UNGARO/SIMONTON

**PREFERRED CARE PARTNERS
HOLDING CORP., et al.,**

       **Plaintiffs,**

**v.**

**HUMANA, INC.,**

       **Defendant.**

_____/

### ORDER REGARDING DOCUMENTS SUBMITTED FOR _IN CAMERA_ REVIEW

       Presently pending before the Court are Plaintiffs' Request for _In Camera_ Review

and Finding of Waiver of Attorney Client Privilege (DE # 158),[1] and Defendant's Cross-

Motion to Determine Inadvertent Disclosure of Privileged Emails (DE # 179).[2]  A hearing

was held before the undersigned Magistrate Judge on April 3, 2009.  Based upon a

careful review of the record as a whole, include the parties' arguments at the April 3,

2009 hearing, and for the reasons stated herein, Plaintiff's motion is GRANTED IN PART

AND DENIED IN PART; and, Defendant's cross-motion is DENIED.

       I.     **BACKGROUND**

       Plaintiffs Preferred Care Partners Holding Corp. and Preferred Care Partners, Inc.

(collectively, "PCP") brought this action against Defendant Humana, Inc. to recover

damages that it alleges resulted from unsuccessful negotiations to sell PCP to Humana.

_____

      [1]  This motion is fully briefed (DE ## 173, 188).

      [2]  Defendant's response to Plaintiff's Motion for _In Camera_ Review (DE # 173)
sought separate relief as to additional documents not included in Plaintiff's motion in
the form of the instant cross-motion, which was filed by the Clerk of the Court as a
separate docket entry (DE # 179).  Plaintiff filed a joint reply in support of its motion and
response in opposition to Humana's cross-motion (DE # 188).

The jurisdiction of this Court is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332.  According to the Amended Complaint, PCP operates a health plan with a Medicare Advantage Contract which puts them in direct competition with Humana.  In 2007, the parties began negotiating a sale of PCP to Humana; and, as part of the due diligence process, PCP permitted Humana to view its sensitive proprietary information ("due diligence information") under the terms of a Confidentiality Agreement.

After the negotiations failed, PCP alleges, Humana breached the Confidentiality Agreement by, *inter alia*, using the due diligence information to compete with PCP; disclosing the due diligence information to third parties; representing to the public that a sale of PCP to Humana was imminent; using the due diligence information to target and poach PCP's physician providers and their patients; and failing to destroy all of the due diligence information at the close of the negotiations (Count I).  In addition,  PCP sought specific performance and injunctive relief to prevent Humana from using the due diligence information to compete with PCP; disclosing the due diligence information to third parties; disclosing the fact that PCP and Humana discussed a sale; contacting PCP's providers or members; and, to require Humana to destroy all of the due diligence information in its possession (Count II).  PCP also sued Humana for monetary damages (Count III) and injunctive relief (Count IV) under the Florida Trade Secrets Act, Fla. Stat. §§ 688.001-688.009, as well as for tortious interference with advantageous business relationships (Count V) and breach of fiduciary duty (Count VI) (DE # 90).

II.  <u>THE INSTANT MOTIONS</u>

These motions arise from Humana's supplemental production of over 10,000 pages of documents on January 16, 2009, approximately two months after the expiration of the discovery deadline, which passed on November 17, 2008.

2

On February 26, 2009, PCP filed its motion for *in camera* review, seeking a ruling from this Court that the attorney-client privilege does not apply to three emails that Humana turned over to it on January 16, 2009 – namely, the "Wilson Email," the "Print and Purge Email" and the "50/50 Email;" and, that Humana waived the attorney-client privilege as to all documents produced on January 16, 2009, including the Wilson Email, the Print and Purge Email and the 50/50 Email, as well as emails numbered HUMANA SUPP 009980[3] and HUMANA SUPP 004080-004081[4] (DE # 158).

On March 16, 2009, Humana filed a response and cross-motion, in which it asserts that a fourth email delivered to PCP on January 16, 2009 – the "Valuation Email" – is subject to the attorney-client privilege; and, that it did not waive the privilege based on its disclosure (DE # 173).

## II.   LEGAL FRAMEWORK FOR ANALYSIS

### A.   The Attorney-Client Privilege

In a diversity action such as this one, state law governs the scope of the attorney-client privilege.  *See 1550 Brickell Assocs. v. Q.B.E. Ins. Co.*, 253 F.R.D. 697, 699 (S.D. Fla. 2008).  Pursuant to Florida law, "[a] communication between lawyer and client is 'confidential' if it is not intended to be disclosed to third persons." Fla. Stat. § 90.502(1)(c); *accord Cunningham v. Appel*, 831 So. 2d 214, 215 (Fla. 5th Dist. Ct. App. 2002).  The Florida Supreme Court has held that the standard for asserting the privilege is more stringent for corporations than it is for individuals and, therefore, a corporation seeking to shield a communication between lawyer and client from disclosure bears the

---

[3]  Humana waived its claim of privilege as to this document (DE # 173 at 5 n.10).

[4]  PCP concedes that this document is privileged, absent a finding of waiver (DE # 188) at 4).

burden of proving, among other things, that: "the communication would not have been made but for the contemplation of legal services; . . . the content of the communication relates to the legal services being rendered;" and "the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents." *1550 Brickell*, 253 F.R.D. at 699 (citing *Southern Bell Tel. & Tel. Co. v. Deason*, 632 So. 2d 1377, 1383 (Fla. 1994)).

The burden of proof rests squarely on the party claiming the attorney-client privilege to show that the primary purpose of the communication in question was for the purpose of obtaining legal advice, not business advice. *See Carpenter v. Mohawk Indus., Inc.*, No. 4:07-CV-0049-HLM, 2007 WL 5971741, at *9 (N.D. Ga. Oct. 1, 2007) ("When advice given by an attorney relates to both business and legal matters, the legal advice must predominate in order for the attorney-client privilege to apply."); *Hasty v. Lockheed Martin Corp.*, No. Civ. A. 98-1950, 1999 WL 600322, at *2 (E.D. La. Aug. 6, 1999) ("[T]he business aspects of [a corporate] decision are not protected simply because legal considerations are also involved;" and, "in those cases where the document does not contain sufficient information to indicate whether the material was considered confidential, that material should not be privileged.").  As the United States District Court for the Middle District of Florida explained,

> "[t]here is general agreement that the protection of the privilege applies only if the primary or predominate purpose of the attorney-client consultations is to seek legal advice or assistance." [1 Paul R. Rice, Attorney-Client Privilege in the United States] § 7:5.  "There are substantial policy reasons for holding that business documents submitted for attorney review are not by that virtue automatically exempt as privileged or work product protected communications." *Visa USA, Inc. v. First Data Corp*, 2004 WL 1878209, 8 (N.D.Cal.2004).

> The structure of certain business enterprises, when their legal departments have broad powers, and the manner in which they circulate

4

documents is broad, has consequences that those companies must live with relative to their burden of persuasion when privilege is asserted. *See, e.g., In re Vioxx Products Liability Litigation*, 501 F.Supp.2d 789, 805 (E.D.La.2007). When the business "simultaneously sends communications to both lawyers and non-lawyers, it usually cannot claim that the primary purpose of the communication was for legal advice or assistance because the communication served both business and legal purposes." *Id.* (citing *United States v. Chevron Corp.*, 1996 WL 444597 (N.D.Cal.1996)); *United States v. International Business Machines Corp.*, 66 F.R.D. 206, 213 (S.D.N.Y.1974) ("If the document was prepared for purposes of simultaneous review by legal and non-legal personnel, it cannot be said that the primary purpose of the document is to secure legal advice."). Consequently, the privilege does not protect such communications. *In re Vioxx*, 501 F.Supp.2d at 805; Attorney-Client Privilege § 7.2.1 ("Because of the ease with which e-mail technology allows in-house counsel to be brought into discussions, counsel are contacted far more frequently, and through those contacts, are likely encouraged to participate in regular business matters far more frequently and broadly than was the case in the past.").

*In re Seroquel Prods. Liability Litig.*, No. 6:06-md-1769-Orl-22DAB, 2008 WL 1995058, at *4 (M.D. Fla. May 7, 2008).

B.      Involuntary Waiver of the Privilege through Inadvertent Disclosure

Prior to the enactment of Federal Rule of Evidence 502, state law governed the waiver of attorney-client privilege through inadvertent disclosure in diversity cases.  In its motion for *in camera* review, PCP accurately restates the five-part "relevant circumstances" test under Florida law, based on "(1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of document production; (2) the number of inadvertent disclosures; (3) the extent of disclosure; (4) any delay and measures taken to rectify the disclosures; and (5) whether the overriding interests of justice would be served by relieving a party of its error."  *Lightbourne v. McCollum*, 969 So. 2d 326, 334 n.6 (Fla. 2007).  PCP contends that this is the test that should be used to determine that attorney-client privilege issue in the case at bar.

Humana points out, however, that the Federal Rules of Evidence were recently

amended to include Rule 502, and argues that the Court should apply this new, uniform

standard in the case at bar.  Rule 502 provides:

> When made in a Federal proceeding . . ., the disclosure [of a
> communication or information covered by the attorney-client privilege]
> does not operate as a waiver in a Federal or State proceeding if:
>
> (1) the disclosure is inadvertent;
>
> (2) the holder of the privilege or protection took reasonable steps to
> prevent disclosure; and
>
> (3) the holder promptly took reasonable steps to rectify the error, including
> (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed. R. Evid. 502(b).  The Historical Notes accompanying the Rule state that it is

designed to apply to all proceedings pending as of September 19, 2008, "insofar as is

just and practicable."  Fed. R. Evid. 502, Historical Notes regarding Effective and

Applicability Provisions (2009).

The undersigned finds concludes that it is both just and practicable to apply Rule

502 to the case at bar, because PCP does not object to the application of Rule 502;[5] and

because there is no substantive difference between the two standards in light of the

facts presented in this particular case as explained below:

First, the relevant circumstances test and the Rule 502 test both direct the Court

to consider the two most salient factors in the context of this case – namely, the

reasonableness of the precautions taken to prevent the disclosure as well as the

reasonableness of the steps taken to rectify the error.

Second, two elements of the relevant circumstances test – the number of

---

[5]  Indeed, PCP concedes that "Rule 502 adopts the same 'middle ground'
approach as the 'relevant circumstances' test utilized" in PCP's motion *in camera* review
(DE # 188 at 2); and applies the Rule 502 framework in its reply (DE # 188 at 8-10).

inadvertent disclosures and the extent of the disclosures – are implicitly incorporated into the Rule 502 test, even if they are not expressly parsed out as discrete factors in the overall analysis.

Although the final element of the relevant circumstances test – whether the overriding interests of justice would be served by relieving a party of its error – is not incorporated into the Rule 502 test, the undersigned concludes that the application of this aspect fo the test to the circumstances in the case at bar would not alter the result.

### III.   RELEVANT FACTUAL HISTORY

Although the discovery deadline in this case expired on November 17, 2008, Humana delivered over 10,000 pages of supplemental discovery documents to PCP on January 16, 2009, including the four documents – the Wilson Email, the Print and Purge Email, the 50/50 Email and the Valuation Email – that gave rise to the presently pending motion and cross-motion for *in camera* review.

According to the affidavit of Humana's trial counsel, Andrew S. Berman, he believed that Humana had fully complied with its discovery obligations as the discovery deadline approached (DE # 163, Ex. B).  This belief was based on the fact that the Confidentiality Agreement governing the proposed sale of PCP to Humana mandated that any due diligence information obtained by Humana was to be destroyed at the end of the negotiations.

According to Humana, its employees and lawyers mistakenly believed they were in compliance with the Confidentiality Agreement because, although the employees deleted all emails related to the due diligence process in their in-boxes, they were unaware that copies of the emails remained on their computer in a separate file.

However, on November 5, 2008, immediately prior to his deposition, a Humana

7

employee named Charles Beckman discovered emails relating to the due diligence process on his computer that he previously thought he had deleted (DE # 163, Ex. B at 2, ¶ 4). PCP asserts that this discovery should have alerted Humana and its counsel to the fact that not all documents had been deleted as required by the Confidentiality Agreement, and should have caused a review to uncover additional electronic documents (Pltf.'s Supp. Appx.), Humana insists that the documents found on November 5, 2008 related to a prior proposed sale from 2006, and that Humana was not aware of the possibility that its production was incomplete until December 10, 2008, when Mr. Beckman found documents relating to proposed sale at issue in this case.[6]

On December 10, 2008, Humana's counsel ordered relevant employees to conduct a renewed search of their computers. As a result of these renewed searches, which occurred between December 10 and 22, 2008, over 10,000 pages of documents were uncovered (DE # 163, Ex. B).

Humana's trial counsel, Andrew S. Berman, stated at the April 3, 2009 hearing that, between December 10 and 22, 2008, he was unable to conduct a privilege review, because he had to prepare trial documents, such as the pretrial stipulation, jury instructions, summary judgment briefs and motions *in limine*. Thus, he assigned Humana's in-house attorney, Heidi Garwood, the task of beginning to review the newly produced documents and flag materials that appeared to be subject to the attorney-client privilege, which took place over 13 hours on or about December 23 to 24, 2008

---

[6] A review of the emails provided prior to Beckman's deposition included in PCP's supplemental appendix, which was filed under seal on April 6, 2008, shows that some of the Beckman emails are dated after May 2007, at the time that PCP and Humana began conducting renewed negotiations, after the original 2006 negotiations failed. The Court does not condone this careless misstatement by Humana's counsel; however, the fact that these isolated emails were discovered by Beckman does not alter the analysis.

(*id.*).

On December 24, 2008, over the course of eight hours, an associate at Mr. Berman's law firm took over this task where Ms. Garwood left off, and reviewed additional documents, some of which he flagged as privileged (*id.*).

On December 25, 2008, Mr. Berman spent a half-day reviewing the remainder of the documents for privileged material (*id.*).

On December 29, 2008, the documents were provided to a copy service; and, they were returned to Humana's counsel on January 5, 2009 (*id.*).

During this time, Mr. Berman's law partner reviewed only those documents that had been flagged as privileged or non-responsive.  As a result of this review, however, Humana concluded that some of these documents were not, in fact, privileged and they were therefore provided to PCP (*id.*).

On January 15, 2009, after a delay to the health issues of Humana's counsel, Humana's supplemental production of documents was delivered to PCP's counsel, who began reviewing the documents immediately.  On January 18, 2009, PCP's counsel received Humana's privilege log.

In a letter dated January 23, 2009, Humana notified PCP's counsel that the document bates stamped HUMANA 004080-004081 was inadvertently produced, even though it was subject to the attorney-client privilege; and Humana requested its return (Deft.'s Appx. No. 13).[7]

---

[7]  As explained *infra.*, PCP concedes that this document was privileged, and the only issue is whether the privilege was waived.

References to the Sealed Appendix of Exhibits to Defendant Humana's response to Plaintiffs' Motion for *In Camera* Inspection are referred to as "Deft.'s Appx.," followed by the exhibit number.

In a letter dated January 26, 2009, Humana notified PCP's counsel that the Wilson Email was inadvertently produced, even though it was subject to the attorney-client privilege; and Humana requested its return (Deft's Appx. No. 14).

In a letter dated February 5, 2009, PCP's counsel confirmed that it received Humana's letters of January 23 and 26, 2009; he noted that PCP "segregated those documents from Humana's production and placed them in a safe location;" and, that PCP intended "to submit the documents to the Court for *in camera* review and request a ruling that Humana waived its claim of privilege" (Deft.'s Appx. No. 15).

In a letter dated February 6, 2009, Humana notified PCP's counsel that the Print and Purge Email was inadvertently produced, even though it was subject to the attorney-client privilege; and Humana requested its return (Deft.'s Appx. No. 16).

On February 17, 2009, PCP filed its motion for sanctions based on Humana's discovery conduct; and, in support of its motion, it cited redacted portions of the Wilson Email and the Print and Purge Email, noting that Humana asserted a claim of privilege over those documents (DE # 153).

On February 19, 2009, after seeing the 50/50 Email cited in PCP's motion for sanctions, Humana notified PCP's counsel that the 50/50 Email was inadvertently produced, even though it was subject to the attorney-client privilege; and Humana requested its return (Deft.'s Appx. No. 16).

On March 4, 2009, after seeing the Valuation Email cited in PCP's motion for sanctions, Humana notified PCP's counsel that the Valuation Email was inadvertently produced, even though it was subject to the attorney-client privilege; and Humana requested its return (Deft.'s Appx. No. 17).

10

IV.     **ANALYSIS**

A.      **Document Bates Stamped 004080-004081**

Because PCP concedes that this document is privileged, PCP may only use it if Humana waived the privilege by inadvertently disclosing it in its supplemental discovery. The undersigned finds that the privilege was not waived.

As stated above, Federal Rule of Evidence 502 provides that the (1) inadvertent disclosure of privileged material does not constitute a waiver of the privilege if (2) reasonable steps were taken to prevent the disclosure and (3) reasonable steps were taken to rectify the error.

First, this document was inadvertently produced because it was clearly a privileged communication sent from Humana's attorney to a Humana employee to coordinate their efforts to ensure that Humana employees confirmed their destruction of due diligence information in preparing Humana's response in opposition to PCP's motion for partial summary judgment (Deft.'s Appx. No. 6).  In addition, Humana realized the error and requested that PCP return the document within approximately one week of producing it (Deft.'s Appx. No. 12).

Second, Humana took the following reasonable steps to prevent the disclosure of this document.  On December 10, 2009, after Humana's trial counsel recognized the possibility that Humana employees may have inadvertently retained due diligence information that was not turned over to PCP, he immediately ordered the relevant employees to conduct a renewed search for responsive materials.  Notwithstanding the fact that the time constraints were caused by Humana's oversight, Humana conducted a reasonable privilege review in light of all the circumstances.  Upon receiving over 10,000 documents between December 10 and 22, 2008, Heidi Garwood began a search for

11

privileged documents for approximately 13 hours over two days; the search was continued by an attorney from Mr. Berman's office over the course of the next day, and completed by Mr. Berman.  A fourth attorney reviewed the documents that were flagged to be withheld and, based on this review, Humana included additional documents to its batch of supplemental discovery materials.  As a result of this review process, which took place over a matter of days, PCP produced over 10,000 pages of documents and claims that it inadvertently produced only five privileged documents.

Third, Humana took reasonable steps to rectify the error by expressly notifying PCP of its attorney-client privilege claim via correspondence dated January 23, 2009, approximately one week after producing the document, and prior to the inclusion of the Print and Purge Email in any of PCP's court documents in accordance with Federal Rule of Civil Procedure 26(b)(5)(B) (Deft.'s Appx. No. 12).

**B.     "Wilson Email"**
**(Bates Stamped HUMANA SUPP 007498-007501, 007534)**

The Wilson Email is identified on Humana's January 16, 2009 Privilege Log as correspondence sent from Humana's counsel, Ralph Wilson, to Humana employees Tom Liston, Heidi Garwood, Michael Seltzer, Balbino Vazquez and Charles Beckman "regarding Partagas confidentiality agreement" (Deft.'s Appx. No. 11, items 6 and 10).[8] For the reasons stated below, the undersigned concludes that the details provided by Humana to describe the Wilson Email in its privilege log are not privileged, although the substance of the Wilson Email is privileged; and, Humana did not waive the privilege based on its disclosure.

---

[8]  "Partagas" was the code word used to identify Humana's proposed purchase of PCP during the due diligence process.

12

1.    **The Parties' Positions**

Though PCP concedes that the substance of the Wilson is privileged, it contends the information provided by Humana to identify this document in its Privilege Log – the date, recipient list and description – is not privileged and may be used for any purpose (DE # 188 at 5) (Deft.'s Disqualify Appx. 8).[9]

In the alternative, PCP contends that Humana voluntarily waived its claim of privilege with regard to the Wilson Email when it allowed its Chief Financial Officer, Balbino Vazquez, to testify, without objection, that Humana employees were given legal advice to contract with PCP's physician-providers during the due diligence process only to the extent that Humana would do so in the ordinary course of business; and, that Vazquez was referring to the Wilson Email in making this statement (DE # 158 at 10).

Specifically, PCP claimed in its motion for sanctions that one of the Humana employees who received this email, Michael Seltzer, "denied seeking [legal] advice" regarding the appropriateness of authorizing a subordinate to engage in recruitment discussions with two of PCP's physician providers (DE # 153 at 12).  In support of its claim that Humana's untimely production was prejudicial, PCP asserts that if Humana timely produced this entry on its privilege log, it would have been alerted to this "incriminating correlation" (*id.*) and challenged the incorrect or incomplete deposition testimony offered by Seltzer and others during discovery.

Humana contends that the date, subject matter and recipient list of the email is meaningless without an understanding of the attorney-client privileged content of the

---

[9]  References to the Sealed Appendix of Exhibits to Defendant Humana's Motion to Disqualify Counsel are referred to as "Deft.'s Disqualify Appx.," followed by the exhibit number.

email, and thus analogizes PCP's use of this seemingly innocuous information as being the "fruit of the poisonous tree" (DE # 173 at 7-8).

### 2.    The Attorney-Client Privilege

The undersigned concludes that the "foundational" matters pertaining to the Wilson Email, such as those used by Humana in describing the email in its privilege log – the date, recipients, and the "general nature" of the communication – are not protected by the attorney-client privilege.  *See* 1 Edna Selan Epstein, The Attorney-Client Privilege and the Work-Product Doctrine § III.1.E.4 at 93-94 (5th ed. 2007) ("Indeed, in the context of privilege logs, such foundational matters are precisely the type of information which must be supplied to substantiate any privilege claim."); *cf. Church of Scientology of Cal. v. Cooper*, 90 F.R.D. 442, 443 (S.D.N.Y. 1981) (compelling response to deposition question asking "whether discussions concerning various subjects were had, whether compensation was received or arranged for, whether legal services were rendered, and whether documents were shown to [the litigant].") (internal citations omitted). Consistent with PCP's concession, however, the undersigned notes that the substance of the Wilson Email is a textbook example of an attorney-client privileged communication.

### 3.    Waiver By Inadvertent Disclosure

The undersigned concludes that Humana's inadvertent disclosure of the Wilson Email to PCP did not waive the protection of the attorney-client privilege with regard to the substance of the email.

First, the disclosure of the Wilson Email was unquestionably inadvertent, as two copies of this email were identified on Humana's January 15, 2009 Privilege Log (Deft.'s Appx. No. 11, items 6 and 10), although two additional copies evaded Humana's notice

prior to their production to PCP.

Second, Humana took reasonable steps to prevent the disclosure of the Wilson Email.  In addition to the reasonableness of Humana's expedited review process preceding its supplemental production of documents on January 16, 2009, which is described in detail above, the emails contain a header that reads "<u>PRIVILEGED ATTORNEY/CLIENT COMMUNICATION</u>" (Deft.'s Appx. Nos. 2 & 3).

Third, Humana took reasonable steps to rectify the error.  On January 26, 2009, ten days after the Wilson Email was produced – and prior to its inclusion in any of PCP's court documents – Humana expressly notified PCP of its claim that the document was attorney-client material and, in accordance with Federal Rule of Civil Procedure 26(b)(5)(B), requested that it be returned (DE # 158, Ex. 4).

### 4.   <u>Voluntary Waiver</u>

Based upon a review of the record as a whole, the undersigned concludes that Balbino Vazquez's October 3, 2008 deposition testimony does not constitute a voluntary waiver of the attorney-client privileged communication expressed in the Wilson Email.

During the deposition, PCP's counsel asked whether there was "any discussion specifically about [PCP], such as, we're going to target their primary care physicians or providers," or that Humana should refrain from doing so "because of the ongoing discussions?" (DE # 158, Ex. 9 at 3).  Mr. Vazquez responded that, in approximately September or October 2007 (DE # 158, Ex. 9 at 7), he participated in a conference call among Humana employees regarding a plan to increase the rates that it offered to all primary care physicians.

Consequently, one of the conference participants raised the question of whether Humana should offer the same across-the-board rate increase to providers who were

15

also under contract with PCP, or whether it should ignore those providers in order to avoid the appearance of impropriety, given that Humana had been given access to PCP's due diligence information engaged in negotiations to purchase PCP (DE # 158, Ex. 9, *passim*).[10]

Mr. Vazquez testified that he was subsequently told that Humana could go forward with its plan to raise rates for all primary care providers, including those under contract with PCP, without violating the terms of the Confidentiality Agreement, although he could not recall any of the details surrounding this legal opinion, including when it was rendered, who rendered it, or how he learned of it (DE # 158, Ex. 9 at 14-18).

To be sure, it is possible that the Wilson Email is the legal opinion that Mr. Vazquez is referring to in his deposition; however, his general, non-committal statements regarding the nature of that communication – even assuming that he is, in fact, referring to the Wilson Email – are not the purposeful, substantive disclosures that are present when a party voluntarily waives the attorney-client privilege. *Compare Lee v. Progressive Express Ins. Co.*, 909 So. 2d 475, 477 (Fla. 4th Dist. Ct. App. 2005) (finding that the privilege was not waived where the deponent "gave limited responses and did not disclose any specific discussions of the substance of any communications he had with his attorney.") *with Sperling v. City of Kennesaw Police Dept.*, 202 F.R.D. 325 (N.D. Ga. 2001) (finding voluntary waiver where the deponent "read from and relied on" a privileged document during her deposition).

---

[10]   Mr. Vazquez could not recall whether this conference call occurred during the due diligence process or after the negotiations fell through (DE # 158, Ex. 9 at 7, 11-12).

16

C.   The "Print and Purge Email"
     (Bates Stamped HUMANA SUPP 004000-004005)

For the reasons stated below, the undersigned concludes that Humana's

disclosure of the contents of this email constitutes a voluntary waiver of the attorney-

client privilege.  The Print and Purge Email is a string of email correspondence that

begins with a message dated December 10, 2008, from a Humana employee, Amy Boone,

to various Humana employees and third parties who "either had knowledge of the [PCP]

due diligence process or served on the due diligence team," informing them that

> Humana is currently in litigation related to the due diligence process and
> your immediate response is needed (TODAY).  It is imperative that you
> recheck your files (emails, hard copies, shared folders, etc[.]) and make
> sure you have purged all of the [PCP due diligence information].  If you find
> anything, counsel needs you to print or copy any materials that were not
> previously deleted and then purge them from your computer.  You should
> send any materials you find to Heidi Garwood, whose address is provided
> below.  Please respond to this message confirming once again that you
> either found no materials related to the [PCP] due diligence process or you
> found materials and will print/make copies and send materials to Heidi
> Garwood.  Additionally, please copy [in-house counsel] Heidi Garwood . . .
> and [outside counsel] Andy Berman . . . in your response to me

(DE # 158, Ex. 1).

A Humana employee, Amy Brock, responded in an email dated December 11,

2008:

> Amy – I was out yesterday, sorry I couldn't respond.
>
> I don't have any documents from/created by/containing data from [the PCP
> due diligence process].  I have some internal emails with the questions we
> had presented them for due diligence, estimates I created for IT effort, etc.,
> but no documents or data from [PCP].
>
> Do you want copies of all the emails?  Should we delete the emails?

(*id.*).

That same day, Amy Boone forwarded Amy Brock's response to counsel with a

request to "[p]lease advise Amy Brock," and in-house counsel Heidi Garwood replied

directly to Amy Brock, telling her to "[p]lease print out the emails with the attachments

and send them to me" (*id.*).  Finally, Amy Brock wrote to Heidi Garwood and others that

> I have printed and will be mailing the emails with attachments today.
>
> I will also delete the emails.  I apologize for any misunderstandings, when
> we were previously asked to remove [PCP due diligence materials] I had
> understood that to be any of the documents or data [PCP] provided to us
> versus documents we created internally to complete due diligence

(*id.*).

### 1.   The Parties' Positions

PCP points out that it redacted the portions of this email that "consist of

communications between Humana employees and Humana's in-house counsel" in its

motion for sanctions; and, thus, "the unredacted portions that consist of

communications between Humana employees Amy Brock and Amy Boone" are not

protected by the attorney-client privilege (DE # 188 at 3-4).

Thus, PCP cited this redacted document in its motion for sanctions by pointing

out that Humana responded to PCP's motion for partial summary judgment by attaching

declarations of some of its employees stating that they deleted all due diligence

information on their computers; but, that it did not include a declaration from Amy

Brock.  Thus, PCP cited this email chain to establish that Brock had due diligence

information and, therefore, that Humana's "print and purge" strategy did not work and

that PCP did not receive all the discovery materials that it is entitled to receive (DE # 153

at 4 n.10).

Humana, on the other hand, contends that this email chain, in its entirety,

constitutes a privileged attorney-client communication and that the privilege was not

waived.

### 2.     The Attorney-Client Privilege

The undersigned finds that the Print and Purge Email – in both its redacted and unredacted form – is protected by the attorney-client privilege.  The fact that PCP redacted portions of the document consisting of direct communications to and from Humana's attorneys is not the dispositive factor where, as here, the unredacted portions of the document comprise communications among the corporation's employees intended to disseminate the legal advice provided by counsel and discussing the ramifications of that legal advice.  *See Weeks v. Samsung Heavy Indus. Co.,* No. 93-C-4899, 1996 WL 341537, at *4 (N.D. Ill. June 20, 1996) ("A privileged communication does not lose its status as such when an executive relays legal advice to another who shares responsibility for the subject matter underlying the consultation. Management personnel should be able to discuss the legal advice rendered to them as agents of the corporation.") (internal citations omitted).

### 3.     Waiver by Inadvertent Disclosure

The undersigned concludes that Humana's inadvertent disclosure of the Print and Purge Email to PCP did not waive the protection of the attorney-client privilege.

First, based upon a review of the record as a whole, including the nature of the correspondence, the large number of documents that Humana produced on an expedited basis and Humana's conduct subsequent to its supplemental production of documents, the undersigned concludes that Humana's disclosure of this document was inadvertent.

Second, Humana took reasonable steps to prevent the disclosure of the Print and Purge Email, by virtue of its pre-production privilege review process, as described in detail above.

Third, Humana took reasonable steps to rectify the error by expressly notifying PCP of its attorney-client privilege claim via correspondence dated February 6, 2009, prior to the inclusion of the Print and Purge Email in any of PCP's court documents (DE # 158, Ex. F).

4.   <u>Voluntary Waiver</u>

As Humana acknowledged at the April 3, 2009 hearing, it volunteered the details of its so-called "print and purge scheme" in light of the fact that it forms a central component of its defense to PCP's motion for sanctions; and, those details are now a matter of public record.  Thus, consistent with this concession, the undersigned concludes that the Print and Purge Email, to the extent that it describes the manner in which Humana carried out its supplemental production of documents on January 16, 2009, has been waived by virtue of Humana's express voluntary disclosure of those details.

In addition, Humana waived the privilege with regard to the unredacted portions of this document, consisting of an email exchange between Humana employees Amy Boone and Amy Brock, regarding Ms. Brock's discovery of additional due diligence information on her computer on December 11, 2008.  In response to PCP's motion for sanctions, Humana attached Amy Brock's declaration, in which she states that, "[s]ince discovering these additional emails on my computer [on December 11, 2008,] I have printed them out . . . and I have deleted the materials from my machine after printing them out" (DE # 163, Ex. E at 12, ¶ 6).  Therefore, the email from Amy Brock to Amy Boone indicating that she found due diligence information on her computer is no longer privileged.

Finally, counsel's instructions were forwarded to various analysts and investment

bankers who participated in the due diligence process, constituting a waiver of the privilege. *See United States v. Ackert*, 169 F.3d 136, 140 (2d Cir. 1999) (finding waiver of attorney-client privilege where the investment banker's role "was not as a translator or interpreter of client communications").

    D.    <u>"50/50 Email"</u>
           <u>(Bates Stamped HUMANA SUPP 010019-010020)</u>

The 50/50 Email is an email chain that begins with a message dated January 16, 2007, regarding an antitrust analysis of Humana's potential acquisition of PCP and counsel's ultimate opinion regarding the likelihood of such a potential sale.[11]  For the reasons stated below, the undersigned concludes that the 50/50 Email is a privileged attorney-client communication and that the privilege has not been waived.

    1.    <u>The Parties' Positions</u>

PCP argues that the 50/50 Email is not subject to the attorney-client privilege because it conveys business advice, not legal advice; and, that to the extent that the privilege applied in the first instance, it was waived by Humana based on its disclosure of the email to PCP.  Thus, PCP cited it in its motion for sanctions to support its claim that it was deprived of evidence it could have used to support a claim for fraud in the inducement, since Humana never intended to purchase PCP, but merely to use its due diligence information to gain a competitive advantage (DE # 153 at 12-14 & n.59).

Humana, on the other hand, contends that this email chain constitutes a

---

[11]  This privileged attorney-client communication has been filed under seal and, because the undersigned endeavors to docket this Order as a public record, the 50/50 Email is described herein using only the general terms that the parties have already used to describe it in their unsealed briefs (*see, e.g.,* DE # 153 at 13; DE # 163 at 14).  The undersigned further notes that the parties dispute whether a portion of this email discusses the likelihood of a successful sale occurring in general or whether it refers to the narrower issue of whether the proposed sale would pass regulatory muster (*id.*).

privileged attorney-client communication and that the privilege was not waived.

### 2.    The Attorney-Client Privilege

The undersigned finds that the 50/50 Email is protected by the attorney-client privilege.  As stated by another Court in this Circuit,

> [t]he mere mention of business considerations is not enough to compel the disclosure of otherwise privileged material . . . .  Legal advice should remain protected along with "nonlegal considerations" discussed between client and counsel that are relevant to that consultation

*Eglin Federal Credit Union v. Cantor, Fitzgerald Sec. Corp.*, 91 F.R.D. 414, 420 (N.D. Ga. 1981) (quoting *SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 517 (N.D. Conn. 1976)).  While the 50/50 Email was generated in the context of a proposed business deal, the legal advice – which consisted of an antitrust analysis for the purpose of opining whether a proposed purchase of PCP would pass regulatory muster if consummated – was the predominate aspect of the communication and, therefore, the attorney-client privilege attaches.  *See Rowe v. E.I. DuPont de Nemours and Co.*, No. 06-1810-RMB-AMD, 2008 WL 4514092, at *8 (D.N.J. Sept. 30, 2008) ("In deciding whether the attorney-client privilege [applies,] the Court must determine whether the communication is 'designed to meet problems which can fairly be characterized as predominately legal.'").

### 3.    Waiver by Inadvertent Disclosure

The undersigned concludes that Humana's inadvertent disclosure of the 50/50 Email to PCP did not waive the protection of the attorney-client privilege.

First, Humana's disclosure of this document was inadvertent.  In reaching this conclusion, the undersigned relies primarily on the sworn affidavit of Humana attorney Andrew S. Berman, who averred that the 50/50 Email was identified by counsel as being privileged, but was omitted from the Privilege Log and produced to PCP due to a clerical

error committed either by a paralegal or a copy clerk who "misinterpreted a flag placed on that document" (Deft.'s Appx. No. 8 at 4, ¶ 11).

Second, notwithstanding this clerical error, Humana took reasonable steps to prevent the disclosure of the Print and Purge Email, by virtue of its pre-production privilege review process, as described in detail above; and, the email is marked "PRIVILEGED AND CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATION ATTORNEY WORK PRODUCT" (Deft.'s Appx. No. 1).

Third, Humana took reasonable steps to rectify the error. Because counsel for Humana believed the 50/50 Email had been withheld from production based on the attorney-client privilege, they did not realize that it had been inadvertently produced to PCP until it appeared in PCP's motion for sanctions, which was filed on February 17, 2009. After noticing the 50/50 Email in the motion for sanctions, Humana promptly notified PCP of its attorney-client privilege claim via correspondence dated February 19, 2009; and, in accordance with Federal Rule of Civil Procedure 26(b)(5)(B), requested that it be returned (DE # 158, Ex. G).

    E.    <u>"Valuation Email"</u>
            <u>(Bates Stamped HUMANA SUPP 009294, 009296, 009297)</u>

For the reasons stated below, the undersigned concludes that Humana did not carry its burden of demonstrating that the Valuation Email is a privileged attorney-client communication; and, in any event, Humana waived the privilege by disclosing it to PCP. The Valuation Email is an email written by Humana employee Michael Russman to in-house counsel, Ralph Wilson, which states:

> Ralph – Would you please draft a letter to Joe Caruncho at [PCP]. Our intent is to give them a "final" offer to consider. Elements of the letter should include:

- **Purchase Price - [I think it should be $210 million]. Will need for TL to sign off.**
- **Would like to have a reduction to purchase price of $7,823 for each member less than 26,842 as of Jan 1, 2008.**
- **Limited time to respond to our offer. Perhaps 48 hours.**
- **If accepted, would enter into a period of exclusivity to complete due diligence and negotiation of purchase agreement.**
- **Hum will devote the resources necessary to bring transaction to close as expeditiously as possible.**
- **All communications should be directed to JD Moore at Credit Suisse.**

**Is it possible to get a draft today?**

(Deft.'s Appx. No. 4).

**Ralph Wilson's reply, in its entirety, provides:**

**Gents:**
**We can draft such a letter today. Are we going to deal directly with Joe instead of his Banker, with whom we dealt with in the other letters?**
**Thanks**

(Deft.'s Appx. No. 5). It is undisputed that this letter was never drafted, although there is no evidence in the present record regarding why it was never drafted (Deft.'s Appx. No. 9).

### 1.   The Parties' Positions

Although PCP did not include this document in its initial motion for *in camera* review, this document is the subject of Humana's cross-motion, based on its contention that it is protected by the attorney-client privilege and that the privilege has not been waived (DE # 173). In support of its argument that this document was inadvertently disclosed, Humana points to the fact that it was withheld as a confidential attorney-client communication in a prior round of production which took place on June 13, 2008 (Deft.'s Appx. No. 10, item CB Priv 3-5).

PCP responds that this email is not privileged because it pertains to business

24

matters, not legal matters; and, further, that Humana's disclosure of the email to PCP in its supplemental production of documents operates as a waiver of the privilege (DE # 188). Thus, PCP cited it in its motion for sanctions in support of its argument that Humana's late production was prejudicial because this email constitutes an admission that is relevant to the measure of damages, which was not provided to either party's damages expert; and, because PCP was deprived of the opportunity to raise this issue at Michael Russman's deposition, when he testified that Humana does not "compute per member amounts because it's meaningless" (DE # 153 at 9).

2.  The Attorney-Client Privilege

The undersigned concludes that Humana has failed to satisfy its burden of proving that the Valuation Email is protected by the attorney-client privilege because there is no evidence to establish that this communication was offered for the purpose of obtaining legal advice, as opposed to business advice.

As stated on the record at the April 3, 2009 hearing, it is apparent that there are elements of this email that implicate Ralph Wilson's role as a legal advisor in his capacity as Associate General Counsel, as well as his role as a business advisor in his capacity as Vice President.

Nevertheless, Humana has not described his role in the due diligence process nor set forth any details concerning his role in drafting letters proposing sale terms to PCP. In fact, Mr. Wilson's affidavit, filed in support of Humana's cross-motion for *in camera* review, consists of only his testimony that he was "involved in the due diligence process;" that he has "no independent recollection of this email and/or the requests made of me to draft a letter;" except that he is "confident that [he] did not draft the letter requested in the email" (Deft.'s Appx. No. 9). The undersigned notes that she has

reviewed the deposition transcripts of Michael Russman and Charles Beckham, the Humana employees who participated in this email chain, neither of which elucidates Ralph Wilson's role in the due diligence process at issue here.  Mere speculation and the conclusory statements offered by Humana that this is a legal document do not suffice to satisfy its burden of proving that the predominate intent of this communication was to seek Mr. Wilson's legal advice, and that it was not an ordinary business document.  *See St. Joe Co. v. Liberty Mutual Ins. Co.*, No. 3:05-CV-1266-J-25MCR, 2007 WL 141282, at *3 (M.D. Fla. Jan. 16, 2007).[12]

### 3.   Waiver by Inadvertent Disclosure

Even assuming that the Valuation Email is subject to the attorney-client privilege, the undersigned concludes that the privilege was waived by virtue of Humana's inadvertent disclosure.

First, it is a close question whether the Valuation Email was inadvertently produced, though the undersigned concludes that its disclosure was not intentional because this document was included on a prior privilege log (Deft.'s Appx. No. 10, item

---

[12]  The undersigned notes that, at the April 3, 2009 hearing, the parties addressed the concern, raised by the undersigned, that the attorney-client privilege did not attach to the Valuation Email because, at the time it was written, its contents were not intended to be kept confidential, but rather incorporated into a letter that would be disclosed to third parties.  In light of the fact that Humana failed to satisfy its burden of proving that this document sought legal advice, as opposed to business advice, is not necessary to reach the question of whether a draft of a letter – or the outline for a draft of a letter – retains its privileged status if the client transmitted it to his attorney with the intent that it would be sent to a third party, even if it is ultimately never sent.  *See In re Seroquel Prods. Liability Litig.*, No. 6:06-md-1769-Orl-22DAB, 2008 WL 1995058, at *3 (M.D. Fla. May 7, 2008) ("Final documents sent to third parties should be disclosed, as should drafts of those documents, with the privileged exception of words that do not appear in the final version *and* were articulated in the context of legal advice to and from a client as to what should ultimately be disclosed.").

CB Priv 3-5).

Second, it is an even closer question whether Humana took reasonable steps to prevent the disclosure of this document, since it is not marked as a privileged attorney-client communication, like the other documents that are privileged by virtue of the fact that they include exchanges with Humana's in-house counsel, Ralph Wilson.

It is clear, however, that Humana did not take reasonable steps to rectify the inadvertent disclosure, and thus waived any privilege that would have otherwise been applicable to the Valuation Email.  Humana had a number of opportunities to realize that its privilege review of supplemental documents was tainted.

First, by January 23, 2009 at the latest, Humana became aware that at least one privileged document had evaded its review and was accidentally produced, resulting in its counsel drafting a letter to PCP to request its return.

This happened again on January 26, 2009, when Humana requested the return of the Wilson Email; and, on February 6, 2009, when it requested the return of the Print and Purge Email.

Then, on February 19, 2009, after PCP filed its motion for sanctions on February 17, 2009, citing the 50/50 Email, Humana realized that the document was inadvertently produced and requested that it be returned.

Humana has not offered any reasonable explanation for its failure to take any measure to assert the privilege with regard to the Valuation Email between February 17, 2009 (the day it was cited in PCP's motion for sanctions) and March 4, 2009 (the day that Humana requested its return).  In light of the fact that Humana was aware that it inadvertently produced a number of documents which it believed to contain privileged information, Humana had an obligation to carefully review the motion for sanctions to

27

ensure that no additional privileged documents were divulged.

The fact Humana took no action for almost two months after disclosing the Valuation Email to PCP, including a three-week lag after PCP used the document in support of its motion for sanctions, is inconsistent with Humana's claim that this is a protected, confidential communication.  *See* Fed. R. Evid. 502(b), advisory committee notes ("[T]he rule does require the producing party to follow up on any obvious indications that a protected communication or information has been produced inadvertently.").

      **F.**    **Documents Subject to a Subsequent Claim of Privilege**

In its motion for *in camera* review, PCP seeks a preemptive ruling from this Court that "Humana has waived its attorney client privilege claim . . . with respect to all of the documents that Humana untimely produced January 16, 2009 as to which Humana may subsequently claim the privilege" (DE # 158 at 11).  Because the "attorney-client privilege 'must be assessed on a case to case basis, depending on the particular facts of each case,'" the undersigned concludes that it would be premature to grant PCP's request at this juncture.  *Garner v. Wolfinbarger*, 430 F.2d 1093, 1099 n.14 (5th Cir. 1970).  This ruling is issued without prejudice to file an appropriate motion with respect to any specific documents after consulting with opposing counsel in accordance with the Federal and Local Rules.  It is, accordingly,

**ORDERED AND ADJUDGED** that Plaintiffs' Request for *In Camera* Review (DE # 158) is **GRANTED IN PART AND DENIED IN PART**, as follows:

1.    The document bates stamped HUMANA SUPP 004080-004081, is an attorney-client privileged communication, and the privilege has not been waived.

Plaintiffs must promptly return the document to Defendant; and must not use or disclose the information contained therein.

2.      The Wilson Email, bates stamped HUMANA SUPP 007498-007501, is an attorney-client privileged communication.  Plaintiffs must promptly return the document to Defendant; and must not use or disclose the information contained therein.

3.      The Print and Purge email, bates stamped HUMANA SUPP 004000-004005, is an attorney-client privileged communication; however, Defendant's disclosure of the contents of this document constitutes a voluntarily waiver the privilege.  Therefore, Plaintiff is permitted to keep and use the Print and Purge Email for any purpose.

4.      The 50/50 Email, bates stamped HUMANA SUPP 010019-010020, is an attorney-client privileged communication.  Plaintiffs must promptly return the document to Defendant; and must not use or disclose the information contained therein.  It is further

**ORDERED AND ADJUDGED** that Defendant's Cross-Motion to Determine Inadvertent Disclosure of Privileged Emails (DE # 179) is **DENIED**.  Plaintiff is permitted to keep and use the Valuation Email for any purpose.  It is further

**ORDERED AND ADJUDGED** that, to the extent that any of the privileged information described above was used in connection with PCP's Motion for Sanctions (DE # 153), it is hereby stricken.

**DONE AND ORDERED** in chambers in Miami, Florida on April 9, 2009.

_Andrea M. Simonton_

ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE

29

**Copies furnished to:**
**The Honorable Ursula Ungaro, United States District Judge**
**All counsel of record**