UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-20424-CIV-UNGARO

PREFERRED CARE PARTNERS HOLDING
CORP., et al.,

       Plaintiffs,

vs.

HUMANA, INC., a foreign corporation,

       Defendant.
                                     /

## ORDER ON MOTION FOR RECONSIDERATION

THIS CAUSE is before the Court upon Defendant's Motion for Clarification and Reconsideration of Order on Motions for Summary Judgment, filed on April 23, 2009. (D.E. 20, the "Reconsideration Motion".) Plaintiffs filed a response to the Reconsideration Motion on May 8, 2009 (D.E. 217), to which Defendant replied on May 12, 2009 (D.E. 221). Also before the Court is Plaintiffs' Supplement to Their Response to Defendant's Motion for Summary Judgment, filed June 1, 2009 (D.E. 231, the "Supplement"), and Defendant's Reply to Plaintiffs' Supplemental Response to Humana's Motion for Summary Judgment, filed June 8, 2009 (D.E. 236, the "Reply").

THE COURT has considered the Motion, Supplement, Reply and the pertinent portions of the record and is otherwise fully advised in the premises. By way of background, Defendant filed a Motion for Summary Judgment on April 9, 2009 (D.E. 197) wherein it sought, *inter alia*, judgment as a matter of law that it did not breach the Confidentiality Agreement[1] by starting a rumor in the marketplace regarding its possible acquisition of the Plaintiffs' business. The Court

---

[1] Terms not otherwise defined herein shall have the meaning ascribed to them in the Court's Order on Motions for Summary Judgment (D.E. 197).

entered its Order on Defendant's Motion for Summary Judgment (D.E. 197, the "Summary Judgment Order"), finding that it would not be unreasonable for a fact-finder to infer that Defendant was "a" source of the rumor because one of Plaintiffs' providers, Dr. Gerardo Perez, and his office manager, Ms. Pumariega, testified that they had been informed of the acquisition by an alleged representative of the Defendant.  The Court rejected Defendant's argument that the statements were hearsay because they were not offered to prove that Defendant was indeed acquiring Plaintiff (*i.e.*, the truth of the matter asserted), but rather that Defendant was a source of the rumor.  (Summary Judgment Order at 23.)

Defendant then filed its Reconsideration Motion wherein it argued that certain identifying statements (*i.e.,* "I am a Humana representative") made to Dr. Perez and Ms. Pumariega were hearsay because they were being offered to show that Defendant – through its representative – had disclosed the possible sale in breach of the Confidentiality Agreement.  In its Order on the Reconsideration, the Court held,

> Regardless of whether true, the statements purportedly made to Dr. Perez and Ms. Pumareiga (*i.e.,* "I am a Humana representative, and you should become one of our providers because Humana is going to buy Preferred Care.") are admissible to show that there were rumors circulating regarding the sale and that efforts were being made to lure away providers. On the other hand, the clause "I am a Humana representative . . ." cannot be used to prove the truth of that clause, and it does not create a genuine issue of material fact as to the ultimate issue (*i.e.* whether Defendant was the source of the rumor) because <u>Plaintiff has offered no evidence other than the statements themselves to prove that they in fact were made by a representative of Defendant who had the authority to make such a statement</u>. *See* Fed. R. Evid. 801(d)(2)(C) and (D).

(D.E. 230, the "Reconsideration Order," at 4 (emphasis added).)  The Court stated that if it were to rule on Defendant's Reconsideration Motion at that time, it would grant Defendant judgment as a matter of law on Plaintiffs' rumor allegations.  The Court, however, deferred making such a ruling out of an abundance of caution because it was mindful that Plaintiffs may have uncovered certain evidence during the limited discovery period, which was granted as part of Judge Simonton's Sanctions Order, that took place after their Response to Defendant's Summary

2

Judgment Motion was filed.  Accordingly, the Court granted Plaintiffs a second opportunity to show that a genuine issue of material fact existed as to whether Defendant was a source of the rumor, as alleged in paragraphs 90(c) of Count I and 95(c) of Count II in the Amended Complaint.  The Court expressly limited the scope of the Supplement by stating that it "shall only address whether there is a genuine issue of material fact as to whether Defendant breached the Confidentiality Agreement by disclosing its possible acquisition of Plaintiffs' business."

Plaintiffs filed their Supplement, arguing that three different groups of statements give rise to a genuine issue of material fact as to whether Defendant was a source of the rumor.  First, Plaintiffs offer again the testimony of Ms. Pumariega, but this time argue that the statements made to her are not hearsay because they were made by Defendant's agent.  Second, Plaintiffs offer statements made by Defendant's Chief Executive Officer for Medicare and Medicaid, Michael Seltzer, to a third-party, Peter Buigas.  Third, Plaintiffs offer an email written by Defendant's South Florida Market Finance employee, Ed Henry, wherein he assigns due diligence work to someone "trustworthy" because he does not "want anyone on [his] staff being the one fingered for this."  Because the Court finds that Plaintiffs have offered evidence showing that the statements made to Ms. Pumareiga were made by a representative of the Defendant, the Court finds that her testimony raises a genuine issue of material fact as to whether Defendant breached the Confidentiality Agreement by disclosing the possible sale.  Accordingly, the Court will not consider whether Michael Seltzer or Ed Henry's statements create a genuine issue of material fact.

In their Response to Defendant's Motion for Summary Judgment, Plaintiffs offered the November 2008 deposition testimony of Ms. Pumariega.  Ms. Pumareiga stated that a Humana representative named "Alina" came to visit Dr. Perez's office sometime in 2007 and thereafter made several phone calls to Ms. Pumareiga. (Pumareiga Dep. 9:14-17, 17:6-16, Nov. 12, 2008.)  Ms. Pumareiga stated that Alina described herself as a Humana representative and told Ms. Pumareiga that her doctor should contract with Defendant because Defendant was going to be

3

taking over Plaintiffs' business. (*Id.* at 12:7-24; 18:17-18.) On cross-examination, Defendant asked Ms. Pumareiga whether Alina had left a business card. (Id. at 18:25.) In response, Ms. Pumareiga stated the following:

> A. She actually did, and for – until yesterday, the card, I couldn't find it, and I have my Rolodex, like a business card holder, that I looked through when this – when I was told, you know what was going on . . . I discarded the card, because it wasn't something we were going to entertain, but yesterday I'm going through, and I realized there's some filed in between . . .and I actually did come up with her card . . .
>
> \*   \*   \*
> [Business card marked for identification]
>
> Q. How do you recognize the card?
>
> A. **I remember it by being someone that came to visit us regarding an HMO product. I'll go on to say, if I can, regarding this business card, when – from the moment this whole situation came up, and I remember the lady's name being Alina, and I remember that, and that's always what stuck in my mind. So as I was looking through my business cards, I was looking for one named Alina.**
>
> I don't work with any other Alina in any other type of line of business or any other relationship, so the minute I came across this card, I said, this has to be the Alina that came to visit me.
>
> **Do I remember 150 percent**, and I made a note on the back, saying this exactly the card of the agent, **I don't**, but it, coming in – coming out of my Rolodez of my HMO Medicare Products and all my – you know, and it being the Alina, and me having called them yesterday, specifically just the receptionist. And I asked what line of business do you, what – excuse me, health insurance do you, and she said, Humana. **So I said this has to be the Alina. So I just wanted make that disclaimer.**
>
> \*   \*   \*
>
> Q. **Do you have any reason to doubt that this card was given to you by the Alina you have been referring to?**
>
> A. **I don't.**
>
> \*   \*   \*
>
> Q. Okay. When she came to you, she represented that she worked with Humana's plans, or that she was a Humana representative?

      A.      Exactly that, Humana representative.

      Q.      Okay.  So you were under the impression that she worked for Humana?

      A.      Correct.

(Pumareiga Dep. 18-21.)

      As stated earlier, the Court held in its Reconsideration Order that the statement "'I am a Humana representative . . ." cannot be used to prove the truth of that clause, and it does not create a genuine issue of material fact as to the ultimate issue (*i.e.* whether Defendant was the source of the rumor) because <u>Plaintiff offered no evidence other than the statements themselves to prove that they in fact were made by a representative of Defendant who had the authority to make such a statement</u>.  After this Court's ruling, Ms. Pumareiga executed an unsworn declaration under penalty of perjury wherein she states that she erroneously presented the business card of Alina Quintero-Calvet of HealthMed Group, Inc. at her deposition, in the belief that this was the same business card presented by the person named Alina who told her that Defendant was purchasing Plaintiffs' business.  (Pumareiga Declaration (D.E. 231-3) at ¶ 9.)  Ms. Pumareiga states that she has since spoken with Plaintiff's employee, Roy Florez, that her recollection has been refreshed, that now she recalls that shortly after Alina's visit to Dr. Perez's office she passed her business card on to Mr. Florez, and that the correct card is that of Alina Alonso, Sales Representative for Humana Marketpoint, Inc.  (*Id*. at ¶¶ 12-18.)  Thus, the card she produced at her deposition (that of Alina Quintero-Clavet) was produced in error.  Plaintiffs also submit as part of their Supplement an unsworn declaration under penalty of perjury from Mr. Florez, wherein he states that Ms. Pumareiga provided him with Alina Alonso's card back in 2007.  (Florez Declaration (D.E. 231-4) ¶ 5-7.)

      Properly considered, Plaintiffs argue that Ms. Pumareiga's statements regarding what Alina Alonso told her is not hearsay under Fed. R. Evid. 801(d)(2)(D) because an agency relationship existed between Ms. Alonso and Defendant, Ms. Alonso's disclosure about the

5

acquisition was made during the existence of an agency relationship, and that the disclosure concerned a matter within the scope of the agency relationship.[2]  Defendant does not argue Ms. Alonso's statements are not hearsay under Fed. R. Evid. 801(d)(2)(D).  Instead, Defendant argues that the Court should not consider Ms. Pumareiga's declaration for two reasons: (1) that it is outside the scope and spirit of the Court' Reconsideration Order; and (2) Ms. Pumareiga's declaration is a sham.

The Court does not find that Ms. Pumareiga's declaration falls outside the scope of the Court's Reconsideration Order, or that it is a sham.  First, the Court permitted Plaintiffs to supplement their Response to Defendant's Motion for Summary Judgment – not their Response to Defendant's Motion for Reconsideration.[3]  Therefore, the Court must look at the declaration of Ms. Pumareiga in the light most favorable to Plaintiffs and deny summary judgment if the declaration creates a genuine issue of material fact.  The fact that Ms. Pumareiga's declaration may conflict with her earlier deposition does not render it a sham.  *Kennett-Murray Corp. v.*

---

[2]     In support of the foregoing, Plaintiffs offer the deposition testimony of William Steele, Regional Vice President of Humana Marketpoint, Inc., wherein he states that Humana Marketpoint, Inc. "is the career shop that goes out on the Medicare line of business, and enrolls individuals on - on [Defendant's] Medicare Advantage Plans."  (Supplement at 5.)  Defendant does not contest this testimony.

[3]     For this reason, the cases cited by Defendant in footnote four of its Reply are inapposite.  This is not a case where a party is changing its tune on a motion for reconsideration.  Rather, the Court considers Ms. Pumareiga's declaration as if it were presented as part of Plaintiffs' Response to Defendant's Motion for Summary Judgment – not as if Plaintiffs sought reconsideration of the Court's hearsay finding in its Reconsideration Order.

Further, the Court rejects Defendant's "outside the scope" argument because the Reconsideration Order clearly stated that the "Supplement shall only address whether there is a genuine issue of material fact as to whether Defendant breached the Confidentiality Agreement by disclosing its possible acquisition of Plaintiffs' business."  Ms. Pumareiga's declaration is directly relevant to whether there is a genuine issue of material fact as to such a breach, and, thus, within the scope of the Court's Reconsideration Order.

*Bone*, 622 F.3d 887, 893 (5th Cir. 1980).[4]   Rather, it is the jury's role to resolve issues of credibility when a declaration and deposition testimony are at odds with one another.  *Id.* at 894. Where a declaration is inherently inconsistent with the declarant's earlier clear and unambiguous testimony, however, a court may disregard it as a sham and enter summary judgment.  *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).  In such cases, the declaration must flatly contradict the earlier clear and unambiguous testimony without any explanation.  *Id.*; *Tippens v. Celotex Corp.,* 805 F.2d 949, 953-54 (11th Cir. 1986).

In this case, Ms. Pumareiga's deposition testimony regarding her interaction with Defendant's "representative" was clear in some aspects and qualified in others.  For example, Ms. Pumareiga was very clear that the individual who informed her about the possible acquisition introduced herself as "Alina" and also stated that she represented Humana.  Ms. Pumareiga was less certain, however, as to whether the business card she produced at the deposition in fact belonged to this same "Alina."[5]  She expressly qualified her representation about the business card when asked to produce it on cross-examination.  Thus, the Court finds that Ms. Pumareiga's statement regarding the business card was equivocal, and that her subsequent declaration is inherently inconsistent.   Ms. Pumareiga did not state that she was certain that the business card produced at the deposition was the business card of the Alina who informed her of the possible acquisition.  Reading her testimony in a fair light, Ms. Pumareiga

---

[4]        In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[5]        In this way, Ms. Pumareiga's testimony was different from Richard Mesa's testimony and is not "unequivocal," as Defendant suggests. (*See* Def's Reply at 3 (arguing that the Court should strike Ms. Pumareiga's declaration because it struck Richard Mesa's errata sheet).)  Furthermore, the Court notes that the present circumstances are drastically different form the circumstances under which the Court struck Richard Mesa's errata sheet.  For example, Richard Mesa was seeking to wholly change his clear and unambiguous deposition testimony from "yes" to "no."  (*See* Order Striking Richard Mesa's Errata Sheet (D.E. 200).)

simply stated that she believed it to be the same card because there was only on Alina in her Rolodex and that Alina was also involved in the healthcare industry.

Further, the Court notes that Ms. Pumareiga is a disinterested lay witness. In cases where the challenged inconsistent statements are made by disinterested witnesses, the Eleventh Circuit has stated that any such inconsistency is more likely to be attributed to a faulty memory than a predisposition to lie. *See W.C. Lane v. Celotex Corp*., 782 F.2d 1526, 1530-31 (11th Cir. 1986) (reversing district court's grant of summary judgment on the basis that a lay witnesses affidavit was a sham and did not create a genuine issue of material fact). Indeed, the Eleventh Circuit has stressed that to "allow every failure of memory or variation in a witness's testimony to be disregarded as a sham would require too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words the witness . . . was stating the truth." *Tippens*, 805 F.2d at 953-54. Thus, the Court finds that it is for a jury to decide whether to credit Ms. Pumareiga's testimony about whether it was Alina Alonso that disclosed the rumor regarding Defendant's possible acquisition of Plaintiffs' business.

Accordingly, it is hereby

ORDERED AND ADJUDGED that Part II of Defendant's Motion for Reconsideration (D.E. 208) is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this 12th day of June, 2009.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided:
counsel of record